[No. G037665. Fourth Dist., Div. Three. May 15, 2008.]

STEVEN A. FRY, Plaintiff and Appellant, v.
PRO-LINE BOATS, INC., Defendant and Respondent.

**COUNSEL**

Korper & Shefter, René Korper, Bret A. Shefter; Law Offices of René Korper and René Korper for Plaintiff and Appellant.

Beam, Brobeck, West, Borges & Rosa and Donald S. Zalewski for Defendant and Respondent.

**OPINION**

**RYLAARSDAM, Acting P. J.**—Plaintiff Steven A. Fry appeals from a judgment on special verdicts entered for defendant Pro-Line Boats, Inc., on claims for breach of the implied warranty of merchantability and breach of

express warranty relating to a boat he purchased. Plaintiff contends there was no substantial evidence to support the jury's finding defendant had successfully repaired the boat and the court should have granted his motion for new trial. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2003, Outer Limits Marine, defendant's only authorized Southern California dealer, sold plaintiff a new 33-foot Pro-Line Walkaround sportfishing boat manufactured by defendant. The boat came with a one-year warranty from defendant that it would be "free from defects due to material or workmanship under normal non-commercial use." There was also a separate five-year limited warranty "on all factory-installed accessories, . . . engines, outdrives, mechanical . . . [and] electrical systems, controls, and more."

After the purchase, plaintiff submitted to defendant a list of problems with the boat, including a starboard-side list, a malfunctioning rotary rudder-position sensor, water in the bilge, a defectively designed overhead compartment, and an inadequately accessible chain locker. Defendant provided services and repairs.

In December 2004, plaintiff demanded defendant buy back the boat when it appeared to him defendant had incorrectly mounted the outboard engines. Defendant agreed to remount the engines, but plaintiff refused to allow the opportunity.

Plaintiff sued defendant for violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) alleging breach of implied warranty of merchantability and breach of express warranty. The jury returned a special verdict finding 12 to zero that the vessel satisfied the implied warranty of merchantability as it was "of the same quality as other similar motor boats generally acceptable in the trade or fit for [the] ordinary purposes for which boats are used." It also returned a special verdict finding nine to three that although the boat did not conform to the express warranties, defendant had "repair[ed it] to conform to the limited express warranties after a reasonable number of opportunities."

Plaintiff moved for a new trial on the ground there was no substantial evidence to support the finding defendant had repaired the boat to conform to the express warranty. The court denied the motion because, although it disagreed with the verdict, there was substantial evidence to support it. According to the court, the jury could have based its decision on the belief

defendant was willing to perform further repairs but plaintiff instead "brought everything to a screeching halt" by filing suit.

Additional facts are set out in the discussion.

## DISCUSSION

■ Plaintiff contends the evidence was insufficient to support the jury's determinations defendant had resolved the problems with the rudder-position sensor, the starboard list, the water in the bilge, the overhead compartment, and the chain locker and that the boat was fit for its ordinary purpose. We disagree.

### 1. Rudder-position Sensor

Plaintiff concedes defendant replaced the rudder-position sensor each time it failed and that the current one is not broken. But he asserts defendant's expert "confirmed the sensor prevents [him] from fully raising and locking the engines, and that therefore he cannot safely tow the vessel." Plaintiff misstates this testimony. Defendant's expert testified the engines could not be lifted to the locked position without hitting the rudder-position sensor on the rear of the boat. He did not say the engines could not be fully raised and locked.

Plaintiff argues the striking of the sensor on the boat "presumably . . . will eventually cause the sensor to break again." Whether it will or not is pure speculation, which will not support a reversal of the judgment. (*People v. Gray* (2005) 37 Cal.4th 168, 230 [33 Cal.Rptr.3d 451, 118 P.3d 496]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 864 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ Also without merit is plaintiff's contention the linear rudder-position sensor that is currently on the boat is improper and that a rotary rudder-position sensor should have been installed instead. Both sensors were made by Raymarine. Pat Adsit, a 15-year-certified Raymarine technician, testified he installed the linear rudder-position sensor after the company that distributes the sensors told him the rotary rudder-position sensor had "shortcomings." In fact, plaintiff admitted reading a pamphlet that said the rotary rudder-position sensor "was highly limited in the kinds of applications it should be used for." According to Adsit, the linear rudder-position sensor was a new product that was appropriate for plaintiff's boat. Defendant's vice-president and general manager, John E. Walker, may have testified the rotary rudder-position sensor was the correct unit, but such conflicts in the testimony were for the jury to resolve. We will not reverse its determination

where, as here, "the testimony on which it is based is [not] wholly unacceptable to reasonable minds or unbelievable per se. [Citation.]" (*Wanland v. Los Gatos Lodge, Inc.* (1991) 230 Cal.App.3d 1507, 1519 [281 Cal.Rptr. 890].)

## 2. *Starboard List*

Plaintiff contends the boat had a starboard list that defendant never attempted to repair. The evidence belies his claim. Although defendant did not believe the boat listed improperly, customer representative Bill Shade tried to address plaintiff's concerns by offering to install lead ballast to the boat to redistribute the weight, but plaintiff rejected it as being a "band-aid."

Acknowledging the evidence, plaintiff maintains it was not substantial because it was hearsay, he denied it had occurred, Shade did not take the stand, and there were no notes of the conversation even though defendant generally took them. The contention lacks merit. Plaintiff waived any hearsay objection by failing to raise it at trial (Evid. Code, § 353), and his remaining attacks on the evidence merely present conflicts in the evidence.

According to plaintiff, even if the jury believed Walker, the evidence does not support "its finding that [defendant] actually repaired the vessel." That presumes the jury found there was an abnormal list that needed repairing.

■ The jury returned a special verdict finding the "boat fail[ed] to perform as represented in the limited express warranties" and that defendant had repaired it to conform. But the verdict form did not require the jury to specify the particular ways in which the boat failed to perform. Thus, the jury may have found some of the defects claimed by plaintiff existed but not others. Plaintiff could have requested the special verdict include more specific interrogatories embracing each of the claimed defects but he did not and now must live with it. (See *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1159 [46 Cal.Rptr.3d 780]; *Babcock v. Omansky* (1973) 31 Cal.App.3d 625, 630 [107 Cal.Rptr. 512].) We presume the judgment is correct and indulge all intendments and presumptions in its favor where the record is silent. (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 369 [17 Cal.Rptr.3d 39].) Plaintiff "has the burden of affirmatively showing error by an adequate record." (*Ibid.*)

■ Here, because it is undisputed the list was not repaired but yet the jury awarded plaintiff no damages, we presume the jury found the list did not make the boat fail to perform under the limited express warranties. Such a finding is supported by substantial evidence. In his deposition testimony, admitted into evidence at trial, plaintiff's expert Peter Britton explained the standard for a "relatively level" boat was a static flotation of "within five

degrees." Britton concluded the boat had a 2-degree list. Although at trial he changed his opinion and testified a 2-degree list was not "relatively level," he was impeached with his deposition statements. The resolution of any conflict between Britton's trial and deposition testimony was for the jury. (*Neyens v. Sellnow* (1962) 202 Cal.App.2d 745, 749 [21 Cal.Rptr. 151].)

Defendant presented evidence there was even less of a list. Chuck Wagner, a marine surveyor who inspected the boat on defendant's behalf, found a "very minimal" or "one-degree list" when the boat was taken out on the water. Defense expert Jonathan Ide determined "the boat floats virtually level" and the "angle indicator shows zero" with the freshwater tank emptied as required by the ABYC (American Boat & Yacht Council), an industry recommendation for boat manufacturers to assess static floatation. Although the tank weighs about 180 pounds when full, defendant does not automatically offset that with ballast on the port side because it does not know how the customer will load or use the boat including whether or how much water will be put in the tank.

Plaintiff takes issue with the suggestion he caused the list by putting water in the freshwater tank or from lack of a trim tab on the boat's port engine. He asserts the jury rejected that theory because it found the boat's "failure to comply with the limited express warranties" was not "caused solely by unauthorized or unreasonable use of the . . . boat following its sale." But that does not eliminate the possibility the jury may have found the list was caused by his authorized and reasonable use, including the way he loaded the boat, and not by any failure to conform to the express warranties.

3. *Water in the Bilge*

Plaintiff argues the bilge pumps were improperly placed because Britton testified there was no bilge pump at the lowest point of the bilge, causing water accumulation that resulted in mold and corrosion. Substantial contrary evidence exists.

Walker disputed the claim of corrosion and testified the bilge pumps could not be installed at the lowest point of the bilge because the hull of the boat has a sharp V-shape. A pad must be placed on the floor in order to install the bilge pumps. This allows the pumps to be screwed into the pad rather than into the bottom of the boat, which is only three-quarters of an inch thick. According to Walker, mounting the pumps on pads is the industry standard.

Plaintiff maintains he poured 48 gallons of water in the bilge before the pumps activated. The water had moved forward into the center or mid-berth area of the bilge where it accumulated. But plaintiff acknowledges that in

response to his concern, defendant immediately provided a plug that was missing when the boat was delivered. The plug prevents water from moving forward into the mid-berth area.

Plaintiff criticizes defendant for not testing "to determine whether water still entered that area even with the plug in," but his own expert agreed that "if the plug is in place, water cannot move forward." And although plaintiff asserts "[w]ater is still trapped in the center part of the bilge, and cannot be removed by operating the bilge pumps but instead requires removal with a sponge attached to a length of flexible hose," he cites no supporting evidence and has waived the contention. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416].)

Even if not waived, substantial evidence exists the bilge pumps were not designed to remove all water and boat owners are responsible for removing water not picked up by the bilge pumps with a sponge on the end of a stick. The mere fact the jury found the boat's "failure to comply with the limited express warranties" was not "caused solely by unauthorized or unreasonable use" does not mean it rejected that evidence.

### 4. Overhead Compartment and Access to Chain Locker

Plaintiff contends the overhead compartment "came back and hit [him] directly in the forehead" when the boat hit a "significant" swell. His expert concluded plaintiff misspoke because the compartment does not move. Ide agreed the compartment was fixed and opined there was adequate distance between the cabinet and the head of the person at the helm.

Plaintiff asserts Ide's testimony was not substantial because he did not test the boat under swell conditions. But that does not mean Ide's opinion was based on speculative or conjectural factors, as defendant claims. Ide, who is 5 feet 11 inches tall, measured the distance between the compartment and his forehead while he stood normally with his hands on the steering wheel; he determined the distance of 11 inches was adequate. Because Ide's opinion was not "based on incompetent material, the weight to be given [it] is a question for the trier of fact . . . ." (*People v. Rice* (1960) 185 Cal.App.2d 207, 213 [8 Cal.Rptr. 76].)

As to the conflicting expert testimony on the anchor chain, with Britton testifying the opening to it was too small and Ide, in contrast, opining the opening was adequate although only one hand could fit through, that too was a question of fact for the jury. (See *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 204 [52 Cal.Rptr.3d 744].) Plaintiff's claim of error in this regard lacks merit.

### 5. *Merchantability*

Lastly, plaintiff argues the boat did not comply with the implied warranty of merchantability because "industry standards require its wiring to be secured at least every 18 inches" and "Britton and Fry testified that the vessel did not satisfy this standard." Although plaintiff acknowledges "Walker testified otherwise," he claims he "produced pictures conclusively disproving Walker's testimony." Whether he did or not was yet another matter within the jury's exclusive province.

### DISPOSITION

The judgment is affirmed. Defendant shall recover its costs on appeal.

O'Leary, J., and Fybel, J., concurred.