[No. E045443. Fourth Dist., Div. Two. June 15, 2009.]

JESS MEXIA, Plaintiff and Appellant, v.
RINKER BOAT COMPANY, INC., et al., Defendants and Respondents.

1300

**COUNSEL**

Law Offices of Rene Korper, Rene Korper and Sophie A. Hubscher for Plaintiff and Appellant.

Cummings, McClorey, Davis, Acho & Associates and Sarah L. Overton for Defendants and Respondents.

**OPINION**

**KING, J.**—Plaintiff Jess Mexia sued Rinker Boat Company, Inc. (Rinker), and Miller's Landing (Miller) for breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) (the Song-Beverly Act). In essence, Mexia alleged that he

purchased from Miller a boat manufactured by Rinker that was unmerchantable due to a latent defect, which subsequently caused the boat's engine to corrode. He commenced his action within four years after purchasing the boat.

In support of their demurrer to the complaint, Rinker and Miller asserted that Civil Code section 1791.1, subdivision (c)—a provision of the Song-Beverly Act that defines the duration of the implied warranty of merchantability—is a one-year statute of limitations that bars Mexia's claim.[1] The court sustained the demurrer without leave to amend. After judgment was entered in favor of Rinker and Miller, Mexia appealed.

On appeal, Rinker and Miller concede that the duration provision is not a statute of limitations and that the applicable statute of limitations is four years. They argue, however, that the judgment can be affirmed on other grounds. Among other arguments, they contend that the duration provision of the Song-Beverly Act should be interpreted as barring an action for breach of the implied warranty of merchantability when the purchaser fails to discover and report the defect to the seller within the time period specified in that provision. We reject this argument because the plain language of the statute, particularly in light of the consumer protection policies supporting the Song-Beverly Act, make clear that the statute merely creates a limited, prospective duration for the implied warranty of merchantability; it does not create a deadline for discovering latent defects or for giving notice to the seller. Because we also reject Rinker and Miller's other arguments, we reverse the judgment.

## I. SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]

Mexia bought a boat from Miller on April 12, 2003. The boat was manufactured by Rinker. Rinker gave an express "Limited Warranty" to Mexia, a copy of which is attached to the complaint. Rinker's limited warranty provides that the boat "will be free from substantial defects in materials and workmanship for a period of one (1) year from the date of purchase . . . [and] the boat hull will be free of structural defects in material and workmanship for a period of five (5) years from date of purchase . . . ." The express warranty does not apply to certain equipment and accessories,

---

[1] We will refer to Civil Code section 1791.1, subdivision (c) at times as the "duration provision."

[2] Our statement of facts is based upon Mexia's complaint, the properly pleaded allegations of which we accept as true. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173].)

including the boat engine. Rinker's limited warranty expressly limits "the duration of any implied warranties of merchantability and all implied warranties of fitness for a particular purpose to the term of this limited warranty" and "disclaims any implied warranties of merchantability and implied warranties of fitness for a particular purpose after expiration of this limited warranty." (Capitalization omitted.) Finally, the limited warranty states that "[n]o action to enforce this Limited Warranty shall be commenced later than six (6) months after expiration of this Limited Warranty."

By July 2005, repairs to the boat were needed "because of defects, nonconformities, misadjustments or malfunctions relating to corrosion in the engine." (Mexia did not allege the date he first observed the defects, etc.) On July 8, 2005, Mexia returned the boat to a boat dealer authorized to make repairs under the written warranties. Subsequently, the boat "exhibited further and additional defects, nonconformities, misadjustments or malfunctions in the same components or systems." Each time, Mexia notified Rinker and Mercury Marine of the problems within a reasonable time after discovering the problem, demanding that the boat be repaired under the warranties. Defendants failed to make the boat "conform to the applicable warranties . . . ." On October 3, 2006, Mexia discovered that defendants "were unable or unwilling to make the [boat] conform to the applicable warranties."

Mexia alleges that at the time he acquired the boat, each defendant "impliedly warranted that the [boat] was merchantable as provided in [the Song-Beverly Act]." The boat, however, "was not merchantable as evidenced by the defects, nonconformities, misadjustments, and malfunctions" alleged in the complaint.

The complaint was filed on November 27, 2006—three years seven months after Mexia purchased the boat.

Rinker and Miller demurred to the single cause of action asserted against them—breach of the implied warranty of merchantability under the Song-Beverly Act. As stated above, the court sustained the demurrer without leave to amend.[3] Judgment was thereafter entered in favor of Rinker and Miller.

## II.  ANALYSIS

### A.  *Standard of Review*

We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action.

---

[3] A first cause of action for breach of express warranty is asserted against Mercury Marine, the manufacturer of the boat's engine. Mercury Marine did not demur to the complaint and is not a party to this appeal.

(*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### B. *Background*

■ Under the Song-Beverly Act, every retail sale of "consumer goods" in California includes an implied warranty by the manufacturer and the retail seller that the goods are "merchantable" unless the goods are expressly sold "as is" or "with all faults."[4] (Civ. Code, §§ 1791.3, 1792.) Merchantability, for purposes of the Song-Beverly Act, means that the consumer goods: "(1) Pass without objection in the trade under the contract description. [¶] (2) Are fit for the ordinary purposes for which such goods are used. [¶] (3) Are adequately contained, packaged, and labeled. [And] [¶] (4) Conform to the promises or affirmations of fact made on the container or label." (Civ. Code, § 1791.1.) " 'The core test of merchantability is fitness for the ordinary purpose for which such goods are used. [Citation.]' [Citations.]" (*Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 26 [65 Cal.Rptr.3d 695].) Such fitness is shown if the product "is 'in safe condition and substantially free of defects' . . . ." (*Id.* at p. 27.)

"When there has been a breach of the implied warranty of merchantability, a buyer 'may bring an action for the recovery of damages and other legal and equitable relief.' (Civ. Code, § 1794, subd. (a).)" (*Mocek v. Alfa Leisure, Inc.* (2003) 114 Cal.App.4th 402, 406 [7 Cal.Rptr.3d 546] (*Mocek*).)

■ Although the Uniform Commercial Code provides a similar warranty of merchantability (Cal. U. Com. Code, § 2314), its provisions proved "limited in providing effective recourse to a consumer dissatisfied with a purchase." (*Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 213 [285 Cal.Rptr. 717] (*Krieger*).) In order to provide greater protections and remedies for consumers, the Legislature enacted the Song-Beverly Act. (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 801 [50 Cal.Rptr.3d 731].) It "is strongly pro-consumer"

---

[4] "Consumer goods" is defined in the Song-Beverly Act as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." (Civ. Code, § 1791, subd. (a).)

and "makes clear its pro-consumer remedies are in addition to those available to a consumer pursuant to the [Uniform] Commercial Code . . . ." (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 [73 Cal.Rptr.2d 682, 953 P.2d 858].) To "the extent that the [Song-Beverly] Act gives rights to the buyers of consumer goods, it prevails over conflicting provisions of the Uniform Commercial Code." (4 Witkin, Summary of Cal. Law (10th ed. 2005) Sales, § 52, p. 63, citing Civ. Code, § 1790.3.)

One innovation of the Song-Beverly Act is an express provision for a duration of the implied warranty of merchantability.[5] (Civ. Code, § 1791.1, subd. (c).) The Uniform Commercial Code, by contrast, did not expressly set forth a duration of the warranty. However, in order to prove a breach of the implied warranty, the purchaser was required to show that the defect existed at the time the product was sold or delivered. (1 White & Summers, Uniform Commercial Code (5th ed. 2006) § 9-12, pp. 657–658; see, e.g., *Makuc v. American Honda Motor Co.* (1st Cir. 1987) 835 F.2d 389, 392–393; *Hargett v. Midas International Corp.* (Miss. 1987) 508 So.2d 663, 665.) In effect, therefore, there is no "duration" of the implied warranty under the Uniform Commercial Code in any meaningful sense; the product is either merchantable or not (and a breach of the implied warranty occurs or not) only at the time of delivery. (See Cal. U. Com. Code, § 2725, subd. (2).)

The duration provision in the Song-Beverly Act provides that the "duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer. Where no duration for an express warranty is stated with respect to consumer goods, or parts thereof, the duration of the implied warranty shall be the maximum period prescribed above." (Civ. Code, § 1791.1, subd. (c).) By defining a duration for the implied warranties under the Song-Beverly Act, the Legislature arguably "made an improvement in clarity over the [California Uniform Commercial] Code[,] which says nothing about their duration except that a cause of action for their breach accrues upon delivery." (Comment, *Consumer Warranty Law in California Under the Commercial Code and the Song-Beverly and Magnuson-Moss Warranty Acts* (1979) 26 UCLA L.Rev. 583, 638, fn. omitted.)

▉ The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale. (See *Moore v. Hubbard & Johnson*

---

[5] The duration provision was enacted one year after the enactment of the Song-Beverly Act as part of a bill "designed to clarify and refine the [Song-Beverly Act]." (Cal. Dept. Consumer Affairs, Enrolled Bill Rep. on Sen. Bill No. 742 (1971 Reg. Sess.) Nov. 5, 1971, p. 1.)

*Lumber Co.* (1957) 149 Cal.App.2d 236, 241 [308 P.2d 794]; *Brittalia Ventures v. Stuke Nursery Co., Inc.* (2007) 153 Cal.App.4th 17, 24 [62 Cal.Rptr.3d 467]; *Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, 950–952 [56 Cal.Rptr.3d 177].) Indeed, "[u]ndisclosed latent defects . . . are the very evil that the implied warranty of merchantability was designed to remedy." (*Willis Mining, Inc. v. Noggle* (1998) 235 Ga.App. 747, 749 [509 S.E.2d 731].) In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery. This distinction is explained in *Moore*. In that case, a defendant sold lumber to a contractor for use in the construction of a building. (*Moore v. Hubbard & Johnson Lumber Co., supra*, at pp. 237–238.) The lumber was infested with beetles that would eat their way out of the wood, leaving holes in the wood. (*Id.* at p. 238.) The lumber was sold with an implied warranty of merchantability, which was " ' "sufficiently broad to impose liability . . . if the goods contain an impurity of such a nature as to render them unusable and therefore unsaleable, for the general uses and purposes of goods of the kind described. [(]*Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 694 [268 P.2d 1041].[)]" ' " (*Id.* at pp. 240–241.) The court adopted the trial court's explanation of how this rule applied when the alleged defect is latent: " 'Since this defect was hidden it was in the nature of a latent defect. Further, there was evidence that if such a defect were known the lumber would be discarded as not being [of the quality described in the sales contract]. In such a case the lumber would be *unusable* and *unsalable*. Applying the rationale of the *Burr* case, *supra*, such goods would not be merchantable. Further, it is usually stated that the goods must be such that with the defects *known* they would be salable as goods of the general kind which were described or supposed to be when bought. [Citations.] As has been pointed out, if this defect were known they would not have been salable "as goods of the general kind which were described." They would not measure up to the description given by the purchaser, and hence would breach the implied warranty of merchantability.' " (*Id.* at p. 241.) Thus, although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known.

The Song-Beverly Act does not include its own statute of limitations. (*Krieger, supra*, 234 Cal.App.3d at p. 213.) California courts have held that the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by the same statute that governs the statute of limitations for warranties arising under the California Uniform Commercial Code: section 2725 of the California Uniform Commercial Code. (*Krieger, supra*, at p. 215; *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 132 [41 Cal.Rptr.2d 295]; *Carrau v. Marvin Lumber & Cedar Co.* (2001) 93 Cal.App.4th 281, 297 [112 Cal.Rptr.2d 869].) Under this statute, "(1) An

action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . . [¶] (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (Cal. U. Com. Code, § 2725, subds. (1), (2).)

### C. *Rinker and Miller's Statute of Limitations Argument*

In support of its demurrer before the trial court, Rinker and Miller argued that the duration provision of the Song-Beverly Act constitutes a one-year statute of limitations for breach of implied warranty claims. Because Mexia commenced this action more than one year after purchasing the boat, defendants asserted, his action is barred. The trial court apparently accepted this argument and sustained the demurrer.

██ Rinker and Miller do not repeat the same argument on appeal. They now concede that the statute of limitations for an action for breach of warranty under the Song-Beverly Act is four years pursuant to section 2725 of the California Uniform Commercial Code.[6] (See *Krieger, supra,* 234 Cal.App.3d at p. 215; *Jensen v. BMW of North America, Inc., supra,* 35 Cal.App.4th at p. 132.) Under that statute, a cause of action for breach of warranty accrues, at the earliest, upon tender of delivery. (Cal. U. Com. Code, § 2725, subd. (2).) Thus, the earliest date the implied warranty of merchantability regarding Mexia's boat could have accrued was the date Mexia purchased it—April 12, 2003.[7] Because he filed this action three years seven months after that date, he did so within the four-year limitations period. Therefore, Mexia's action is not barred by a statute of limitations.

On appeal, Rinker asserts a statute of limitations argument different from the argument it made below. It argues that it had expressly limited the time to bring an action to six months after the expiration of its express warranty.[8] Rinker refers us to its written limited warranty, which states: "No action to

---

[6] Although Rinker and Miller did not expressly concede in their appellate brief that the action was brought within the four-year statute of limitations, when the question was put to their counsel at oral argument, counsel conceded that the duration provision is not a statute of limitations and that the statute of limitations is four years.

[7] Although the complaint uses the term "purchased," and does not explicitly state when the boat was "delivered," we construe the pleading liberally to mean that the boat was delivered on or after the date it was purchased. A delivery date later than the date of purchase would, of course, result in a later accrual date and extend further the limitations period.

[8] Miller, who did not give an express warranty for the boat, does not make this argument.

enforce this Limited Warranty shall be commenced later than six (6) months after expiration of this Limited Warranty." The argument is without merit. Mexia is not suing Rinker to enforce its express limited warranty; it is suing Rinker for breach of the implied warranty of merchantability, which arises by operation of law and has a four-year statute of limitations. The contractual six-month period to enforce the express warranty is inapplicable here.

## D.  *The Duration Provision and Other Arguments*

█ In the principal argument asserted in their brief, Rinker and Miller emphasize that Mexia did not notify them of any problem with the boat or bring the boat in for repairs until more than two years after the purchase of the boat. They rely upon sections 2602 and 2607 of the California Uniform Commercial Code. Section 2602, along with section 2601, gives a buyer a right to "reject" nonconforming goods prior to acceptance and thereby avoid any obligation to pay the purchase price. (Cal. U. Com. Code, §§ 2601, 2602, subd. (2)(c).) The rejection must occur "within a reasonable time after their delivery or tender" of the goods. (*Id.*, § 2602, subd. (1).) Section 2607 requires a buyer of goods to notify the seller of any breach within a reasonable time after the buyer discovers or should have discovered the breach. (*Id.*, § 2607, subd. (3)(A).)

These notification requirements, however, do not apply to an action brought under the Song-Beverly Act. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 300–302 [45 Cal.Rptr.2d 10].) In contrast to the California Uniform Commercial Code, the Song-Beverly Act "contains no 'reasonable time' requirement by which the consumer must invoke the [Song-Beverly] Act or lose rights granted by that statutory scheme." (*Krotin v. Porsche Cars North America, Inc., supra*, at pp. 301–302.) Nor is there any require-ment that the buyer allow the seller or manufacturer an opportunity to repair the product prior to bringing an action for breach of the implied warranty of merchantability. (*Mocek, supra*, 114 Cal.App.4th at pp. 406–407.) Moreover, even if California Uniform Commercial Code sections 2601 and 2602 might apply in some case arising under the Song-Beverly Act, they have no application here; Mexia's claim is not based upon an alleged rejection of Miller's tender of the boat to Mexia. And even if section 2607 (governing notification of breach) applied to Mexia's Song-Beverly Act claim, Mexia alleged that he notified Rinker and Miller of the breach within a reasonable time after his discovery of the breach, an allegation we must assume is true for purposes of a demurrer. Finally, in cases arising under the California Uniform Commercial Code, where such notification is required, the question of whether the buyer notified the seller of a breach within a reasonable time is usually a question of fact that cannot be decided at the pleading stage. (See *Fitl v. Strek* (2005) 269 Neb. 51, 55 [690 N.W.2d 605]; *Wal-Mart Stores, Inc. v.*

*Wheeler* (2003) 262 Ga.App. 607, 608 [586 S.E.2d 83]; see also *Fieldstone Co. v. Briggs Plumbing Products, Inc.* (1997) 54 Cal.App.4th 357, 370 [62 Cal.Rptr.2d 701] ["The question of whether notice was reasonable must be determined from the particular circumstances and, where but one inference can be drawn from undisputed facts, the issue may be determined as a matter of law."]; cf. *Whitfield v. Jessup* (1948) 31 Cal.2d 826, 831–832 [193 P.2d 1] [applying Civ. Code, former § 1769, what constitutes reasonable time depends upon the particular circumstances].)

Rinker and Miller further assert that "the boat was fit for its ordinary purpose since Mexia did not seek repair from the defendants until over two years from the time of purchase." They appear to argue that the delay in seeking repairs after the defect was discovered compels the conclusion that the boat was merchantable as a matter of law at the time of sale. This argument ignores the distinction between unmerchantability caused by a latent defect and the subsequent discovery of the defect; the fact that the alleged defect resulted in destructive corrosion two years after the sale of the boat does not necessarily mean that the defect did not exist at the time of sale. To be sure, the failure to seek repair until after two years could mean, as Rinker and Miller suggest, that the boat was merchantable at the relevant time and that the subsequent corrosion was, as they contend, a "maintenance issue" not covered by the implied warranty. At this stage of the case, of course, there is no evidence in the record one way or the other as to whether the alleged defects existed at the time of sale (or within the duration period); all we have are allegations that we must assume are true. Although the evidence produced at later stages of the case could show that the corrosion was due to improper maintenance, it is also possible that Mexia can present evidence that the corrosion was due to a defect that existed at the time of sale but remained latent and undiscoverable for two years. Resolution of the issue is necessarily dependent upon the facts and, if there be any conflict in the evidence, is a matter for a jury. (See *Fry v. Pro-Line Boats, Inc.* (2008) 163 Cal.App.4th 970, 977 [77 Cal.Rptr.3d 622].) At this point in the proceeding, we cannot hold that the boat was merchantable as a matter of law.

Although Rinker and Miller now recognize that the duration provision is not a statute of limitations and that the action was filed within the limitations period, they nevertheless assert that the duration provision should be construed so as to bar Mexia's implied warranty claim. They refer to the duration provision in connection with the assertion that, "[b]y the time Mexia brought the boat for repairs, the implied warranty had already expired by over a year." The argument appears to be based on the premise that a buyer of unmerchantable goods must return them to a retailer within the duration period. During oral argument, Rinker and Miller clarified their position. According to them, the duration provision precludes an action for breach of the implied warranty of merchantability under the Song-Beverly Act when the action is based upon

a latent condition that is not discovered by the consumer and reported to the seller within the duration period.[9] This period could be as little as 60 days and is never longer than one year. (Civ. Code, § 1791.1, subd. (c).) Rinker and Miller do not point to any particular language in the statute or refer us to any authority that supports this interpretation.

■ "Our primary duty when interpreting a statute is to ' "determine and effectuate' " the Legislature's intent." (*Van Horn v. Watson* (2008) 45 Cal.4th 322, 326 [86 Cal.Rptr.3d 350, 197 P.3d 164], fn. omitted.) We begin with the statute's "plain language, affording the words their ordinary and usual meaning, as the words the Legislature chose to enact are the most reliable indicator of its intent." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049].) ■ The word "duration" has a clear and readily understood meaning, viz., the period of time during which something exists or lasts. (Webster's 3d New Internat. Dict. (1993) p. 703; Black's Law Dict. (7th ed. 1999) p. 520, col. 1.) In the duration provision, the "something" that has a period of existence is the implied warranty of merchantability. (Civ. Code, § 1791.1, subd. (c).) According to its plain language, the implied warranty exists for at least 60 days and at most for one year after delivery of the product; after that time, the warranty ceases to exist.

To say that a warranty exists is to say that a cause of action can arise for its breach. Defining the time period during which the implied warranty exists, therefore, also defines the time period during which the warranty can be breached. Thus, by giving the implied warranty a limited prospective existence beyond the time of delivery, the Legislature created the possibility that the implied warranty could be breached after delivery. As discussed above, this is a change from the California Uniform Commercial Code, under which the implied warranty could be breached only at the time of delivery. Giving the implied warranty a prospective existence, however, is not new under the law. Prior to the adoption of the California Uniform Commercial Code, California courts recognized that the implied warranty of merchantability could have a prospective existence. (See, e.g., *Aced v. Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 582 [12 Cal.Rptr. 257, 360 P.2d 897] (*Aced*); *Atkinson v. Elk Corporation of Texas* (2006) 142 Cal.App.4th 212, 230 [48 Cal.Rptr.3d 247] (*Atkinson*).)[10]

---

[9] At oral argument, when pressed for clarification, counsel stated that under the duration provision, "where there is even a latent defect, that [defect] must be discovered and reported within the warranty period."

[10] In *Aced*, a case involving a latent defect in steel tubing that subsequently caused the tubes to corrode, the California Supreme Court held "that this is a case which could properly be found to come within the operation of the principle that, if a warranty relates to a future event before which the defect cannot be discovered by the exercise of reasonable diligence, the warranty, though accompanied by a representation as to present condition, is prospective in

■ Rinker and Miller's interpretation of the duration provision—that latent defects must be discovered and reported to the seller within the specified time—has no support in the text of the statute. The duration provision provides, in essence, that the duration of the implied warranty of merchantability shall be the same as the duration of any reasonable express warranty that accompanies the product, but in no event shorter than 60 days or longer than one year. (Civ. Code, § 1791.1, subd. (c).) There is nothing that suggests a requirement that the purchaser discover and report to the seller a latent defect within that time period.

If the Legislature intended to create a deadline by which a purchaser of goods covered by the Song-Beverly Act must report a defect to the seller, it had a ready model for doing so. As discussed above, section 2607 of the California Uniform Commercial Code provides that when a buyer has accepted a tender of goods, he or she "must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy . . . ." (Cal. U. Com. Code, § 2607, subd. (3)(A).) If the Legislature intended the duration provision to impose a deadline for consumers to give notice of defects under the Song-Beverly Act, it could have easily done so. It did not.

Rinker and Miller's construction of the duration provision would not only impose a notification requirement under the Song-Beverly Act, but would create a notification deadline that would apply *even if the consumer has not discovered or could not have discovered the breach within the duration period*. This is in sharp contrast to the California Uniform Commercial Code provision which imposes a "reasonable" time within which to notify the seller *only after the point the purchaser knew or should have known of the breach*. (Cal. U. Com. Code, § 2607.) During oral argument, Rinker and Miller acknowledged that their interpretation of the duration provision would narrow and restrict the rights and remedies available to consumers vis-à-vis the purchasers of goods under the California Uniform Commercial Code. Indeed,

character and the statute of limitations begins to run as of the time of that event." (*Aced, supra*, 55 Cal.2d at pp. 583–584.) The implied prospective warranty was not unlimited or perpetual; rather, it would exist for only "a reasonable period of time." (*Id.* at p. 584.) The effect of giving the implied warranty a prospective existence, or duration, was to extend the time within which to commence an action for breach of the warranty. (*Id.* at p. 585.)

In *Atkinson*, the court considered whether *Aced*'s "reasonable" duration of the implied warranty of merchantability had continuing validity in light of the duration provision in the Song-Beverly Act. (*Atkinson, supra*, 142 Cal.App.4th at pp. 229–230.) The court concluded that the enactment of the duration provision superseded the *Aced* decision and that *Aced* was no longer good authority for a "reasonable," but indeterminate, duration of the implied warranty of merchantability. (*Atkinson, supra*, 142 Cal.App.4th at pp. 230–231.) The duration provision of the Song-Beverly Act, which has a limited, determinable period, the court held, "*controls the length of the implied warranty of merchantability* . . . ." (142 Cal.App.4th at p. 231, italics added.)

the curtailment of the remedy for those who purchase products with latent defects could be severe. A purchaser of an unmerchantable product who could not and does not discover the product's defect until 13 months after delivery (and then gives timely notice of the defect to the seller) would have almost three years to bring an action for breach of the implied warranty of merchantability under the California Uniform Commercial Code; under Rinker and Miller's interpretation of the duration provision, the same purchaser would be barred from any remedy under the Song-Beverly Act even if the purchaser notified the seller and commenced an action immediately upon discovering the defect.[11] Their interpretation thus conflicts with the policy repeatedly expressed by California courts of the need to construe the Song-Beverly Act so as to implement the legislative intent to *expand* consumer protection and remedies. (See, e.g., *Murillo v. Fleetwood Enterprises, Inc., supra*, 17 Cal.4th at p. 990; *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 [28 Cal.Rptr.2d 371].)

Rinker and Miller nevertheless urge us to adopt their interpretation because of the burden and expense on small businesses in defending implied warranty claims years after the sale. The concern is a valid consideration for those who are charged with setting legislative policy and drafting statutes governing commercial transactions. Indeed, it is out of concern for "modern business practice" and "commercial record keeping" that the drafters of the California Uniform Commercial Code adopted a four-year statute of limitations that would generally commence upon delivery of the product. (Cal. U. Com. Code com., 23A pt. 2 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2725, p. 155; *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 129 [87 Cal.Rptr.3d 5].) To further restrict the rights of consumers in the manner Rinker and Miller suggest is unquestionably a legislative function. We must decline the request to do so.

■ In light of the plain language of the duration provision, and the policy considerations at play in construing a provision of the Song-Beverly Act, we interpret the duration provision as providing the implied warranties under the Song-Beverly Act with a limited prospective existence beyond the date of delivery. We reject Rinker and Miller's proposed construction because it is unsupported by the text of the statute, legal authority, or sound policy.

---

[11] In *Brittalia Ventures v. Stuke Nursery Co., Inc., supra*, 153 Cal.App.4th 17, a walnut farmer purchased walnut trees from the defendant. Approximately two years after the delivery of the trees, a latent defect (a disease) in the trees was discovered. (*Id.* at pp. 21–22.) The farmer subsequently notified the seller of the problem and brought an action for breach of the implied warranty of merchantability under the California Uniform Commercial Code. (153 Cal.App.4th at p. 22.) A jury found in the farmer's favor and the Court of Appeal affirmed. (*Id.* at pp. 22–23, 32.) Under Rinker and Miller's interpretation of the duration provision, a consumer who purchased one of the same diseased trees would be barred from any remedy under the Song-Beverly Act.

## III.   DISPOSITION

The judgment is reversed. Mexia is awarded his costs on appeal.

Ramirez, P. J., and Hollenhorst, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 26, 2009, S174901.