## Lynn PETERSON

v.

## MAZDA MOTOR OF AMERICA, INC.

### Case No. SACV 13–1972–DOC (ANx).

United States District Court,
C.D. California.

Signed Sept. 9, 2014.

 

Ali Abtahi, Abtahi Thigpen LLP, Newport Beach, CA, Idene Saam, Abtahi Thigpen LLP, San Francisco, CA, Jordanna G. Thigpen, Abtahi Thigpen LLP, West Hollywood, CA; Bradley C. West, Terry W. West, The West Law Firm, Shawnee, OK, T. Christopher Tuck, Richardson Patrick Westbrook & Brickman LLC, Mount Pleasant, SC, for Lynn Peterson.

Jessica Midori Beth Higashiyama, Michael L. Mallow, Rachel Aleeza Rappaport, Loeb and Loeb LLP, Los Angeles, CA, for Mazda Motor of America Inc.

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE [34] AND MOTION TO DISMISS FIRST AND THIRD CAUSES OF ACTION [32]**

DAVID O. CARTER, District Judge.

Julie Barrera, Courtroom Clerk.

Before the Court are Defendant's Motion to Strike Marketing, Advertising, and Warranty Allegations and Exhibits in Plaintiff's First Amended Complaint ("Motion to Strike") (Dkt. 34) and Motion to Dismiss First and Third Causes of Action ("Motion to Dismiss") (Dkt. 32). The Court finds this matter appropriate for decision without oral argument. See Fed. R.Civ.P. 78; L.R. 7–15. After reviewing the moving and opposing papers and the reply, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Strike and GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss.

## I. BACKGROUND

The Court draws the following facts from the First Amended Complaint ("FAC") (Dkt. 30). Many of the allegations are essentially the same as in the original complaint.

### A. Mazda

Mazda Motor of America, Inc. ("Mazda") promotes, markets, manufactures, and distributes vehicles in interstate commerce. FAC ¶ 10. As part of its vehicle designs, Mazda features variable valve timing (VVT) assemblies on several of its models, including the Mazda CX–7. Id. ¶ 22. In November 2007, Mazda released a Technical Service Bulletin ("TSB") explaining to authorized dealers that some vehicles were experiencing a loud ticking noise when the engine started because the VVT actuator was not fully engaging. Id. ¶ 26. At this time, the TSB applied to several models, including the 2007 CX–7. Id. ¶ 27. Between 2007 and February 2011, Mazda released at least seven iterations of this TSB relating to its VVT. Id. ¶ 32.

Owners of defective vehicles reported VVT assembly failure on vehicles with as little as one year in service and 20,000 miles. Id. ¶ 24. This defect was also associated with unexpected engine failure. Id. ¶ 33. Such engine failures posed a safety threat to drivers and passengers. Id. ¶ 51.

### B. Ms. Peterson

On or about September 4, 2007, Plaintiff Lynn Peterson purchased a 2008 Mazda CX–7 from an authorized Mazda representative in Laguna Hills, California. Id. ¶ 55. In March 2012, Ms. Peterson's 2008 Mazda CX–7 experienced a VVT assembly failure. She did not know until approximately March 2012 that the VVT assembly

wàs defective. She had the vehicle's VVT assembly repaired at Neftin Westlake Mazda in Thousand Oaks, California, resulting in out-of-pocket repair cost in excess of one thousand dollars. *Id.* ¶¶ 55–57. After suffering economic loss, Ms. Peterson alleges that she would not have purchased the vehicle if Mazda representatives had not concealed facts regarding the latent defect in the VVT assembly. *Id.* ¶ 56.

Ms. Peterson filed her original complaint in this action in December 2013, alleging (1) violations of the California Consumer Legal Remedies Act ("CLRA"); (2) violations of California's False Advertising Law; (3) violations of California's Unfair Competition Law ("UCL"); (4) violations of California's Song–Beverly Consumer Warranty Act ("Song–Beverly" or "Song–Beverly Act"); (5) breach of express warranty; (6) breach of implied warranty; (7) fraudulent concealment; and (8) declaratory relief. Compl. (Dkt. 1). On July 3, 2014, the Court dismissed all of her claims with leave to amend. Order, July 3, 2014 ("Order") (Dkt. 29).

On July 17, 2014, Ms. Peterson filed the FAC alleging (1) violations of the Song–Beverly Act; (2) breach of implied warranty; (3) violations of the UCL; and (4) declaratory relief. FAC. Mazda brings this Motion to dismiss the Song–Beverly and UCL claims for failure to state a claim.

## II. LEGAL STANDARD

### A. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.,* 580 F.Supp.2d 985, 990 (C.D.Cal.2008) (internal quotation marks and citation omitted). The Ninth Circuit has defined "immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) (internal quotation marks and citation omitted), *overruled on other grounds,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir.2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could

not possibly be cured by amendment. *Jackson v. Carey,* 353 F.3d 750, 758 (9th Cir.2003); *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990).

### III. ANALYSIS

#### A. Motion to Strike

■ Mazda requests that allegations contained in paragraphs 2 (line 9), 11–18, 38 (footnote 3), 47, and 92 as well as all of the exhibits in Ms. Peterson's First Amended Complaint be stricken as "immaterial" to Ms. Peterson's claims as currently pled. Mazda argues that the allegations and exhibits at issue concern statements made by Mazda in its express warranties, marketing, and advertising, while the only claims in Ms. Peterson's First Amended Complaint are claims of violations of Song–Beverly, breach of implied warranty, violations of the California Unfair Competition Law, and declaratory relief. In other words, Mazda argues, Ms. Peterson's remaining claims mostly concern whether an alleged latent defect in the VVT of her vehicle breached implied warranties. Motion to Strike at 3.

Ms. Peterson responds that the allegations and exhibits at issue provide context and background information about Mazda's business practices and are relevant to Ms. Peterson's UCL claims. However, Ms. Peterson then goes on to state that she does not intend to conduct discovery on Mazda's marketing and advertising materials and she does not object to the striking of most of paragraph 92, including the only part of the UCL section in Ms. Peterson's complaint that references Mazda's warranties and representations. Motion to Strike Opp'n at 2–4.

Although Ms. Peterson is no longer pursuing relief based specifically on Mazda's warranties or representations, the allegations and exhibits still provide useful background information about Mazda's express warranties. Those warranties, in turn, are related to Ms. Peterson's UCL claims, particularly Ms. Peterson's claims under the "unfair" prong of the UCL, and may be relevant to the Song–Beverly claim since the duration of the implied warranty is tied in part to the duration of the express warranty. Since the allegations and exhibits do have some "possible relation to the controversy" and Mazda has not demonstrated that they will be prejudiced by leaving them in the complaint, the Court DENIES Defendant's Motion to Strike as to paragraphs 2 (line 9), 11–18, 38 (footnote 3), 47, and the first sentence of paragraph 92. Since Ms. Peterson consents to striking the rest of paragraph 92, the Court GRANTS Defendant's Motion to Strike as to the second, third, fourth, and fifth sentences of paragraph 92.

#### B. Motion to Dismiss

##### 1. Ms. Peterson Has Not Adequately Pleaded Her Song–Beverly Claim and "Unlawful" UCL Claim

■ Mazda argues that Ms. Peterson's claim for breach of the implied warranty of merchantability under Song–Beverly fails because Ms. Peterson fails to plead that her vehicle manifested a defect within the statutory implied warranty period under Song–Beverly. Motion to Dismiss at 11. The Court disagreed with Mazda on this point when Mazda raised it in its first motion to dismiss and reply brief. *See* Order, at 5–6; Defendant's Motion to Dismiss, Apr. 18, 2014 (Dkt. 22), at 7–8; De-

fendant's Reply in Support of Motion to Dismiss, May 19, 2014 (Dkt. 25), at 7–9. In this Motion, Mazda provides more detailed arguments, essentially asking for the Court to reconsider this point. Upon reconsideration, the Court agrees with Mazda that Ms. Peterson has not sufficiently pled a claim under Song–Beverly.

Under Song–Beverly, for new consumer goods, "[t]he duration of the implied warranty of merchantability ... shall be coextensive in duration with an express warranty which accompanies the consumer goods ... *but in no event* shall such implied warranty have a duration of less than 60 days nor *more than one year* following the sale of new consumer goods to a retail buyer. Where no duration for an express warranty is stated with respect to consumer goods ... the duration of the implied warranty shall be the maximum period prescribed above." Cal. Civ.Code § 1791.1(c) (emphases added). The same language is used for used consumer goods, except that the duration of the implied warranty for used goods has a duration of less than 30 days and no more than 3 months. Cal. Civ.Code § 1795.5(c).

Here, Ms. Peterson alleged that her vehicle contained a latent defect in its VVT assembly "at the time of purchase," on or about September 4, 2007. FAC ¶¶ 55–56. She alleged that her vehicle experienced a VVT assembly failure on or about March 21, 2012, and that she discovered that the VVT assembly was defective in March 2012, over four years after purchase. *Id.* ¶ 55. She alleges also that the VVT defect was a "latent design defect that is unnoticeable until there is a physical manifestation consisting of engine noise and engine failure." *Id.* ¶ 53. Ms. Peterson does not clearly allege in the FAC whether the vehicle she purchased was new or used. She did not allege that her vehicle mani-

fested any defects within a year (or three months) of purchase.

Mazda argues that Ms. Peterson's Song–Beverly claims fails because the allegation that her vehicle had a latent defect at the time of sale is not a sufficiently allegation of breach of implied warranty without further allegations that the VVT assembly defect manifested itself before the Song–Beverly implied warranty period expired. Motion to Dismiss at 10–11. Plaintiff argues that her allegation that the defect was present at the point of purchase is sufficient. Motion to Dismiss Opp'n at 3.

The issue is whether the phrase "but in no event" in the Song–Beverly Act means that consumers are not due protections under Song–Beverly unless some symptom of the defect surfaces in a new consumer good and the defect renders the good unmerchantable within one year of purchase. (For simplicity's sake, the Court assumes for purposes of this discussion that Ms. Peterson purchased a new vehicle and the one-year maximum duration applies. The Court notes that the analysis should be the same for used goods which are subject to a three-month durational period under Song–Beverly.)

The federal district courts in California appear to be divided into two camps on this issue. In the Court's previous order, this Court held that a warranty can be breached by a latent defect undiscoverable at the time of sale, relying on two cases: *Keegan v. Am. Honda Motor Co., Inc.*, 838 F.Supp.2d 929, 948 (C.D.Cal.2012) (Morrow, J.) and *Ehrlich v. BMW of North Am., LLC*, 801 F.Supp.2d 908, 922 (C.D.Cal.2010) (Collins, J.). In *Keegan*, plaintiff alleged that the too-short rear control arms of his Honda Civic led to premature tire wear. In his complaint, he alleged that the tires of his vehicles had worn out unevenly and prematurely, but that he did not discover that the root of

the problem was the rear control arms until over a year after purchase. In *Ehrlich*, the plaintiff bought a BMW in December 2004. In March 2008, his windshield cracked when he used the sponge portion of a squeegee on it. In November 2008, the replacement windshield cracked while the car was parked overnight in Plaintiff's garage. Plaintiff alleged that BMW had sold the car with a latent defect that caused the windshield to have an abnormally high propensity to crack or chip, but did not allege that the windshield had any problems within a year of purchase. In *Keegan* and *Ehrlich*, defendants argued that the plaintiffs' Song–Beverly claim should be dismissed because the plaintiffs failed to allege that their vehicles were unmerchantable during the one-year period. In both cases, the courts rejected these arguments, citing a California Court of Appeals, Fourth Appellate District case, *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App.4th 1297, 95 Cal.Rptr.3d 285 (2009).

In *Mexia*, the plaintiff purchased a boat in April 2003 that contained a latent defect that caused its engine to corrode. Repairs to the boat were needed by July 2005 and the boat dealer refused to repair the boat. The plaintiff brought suit in November 2006. It is unclear from the opinion when the boat first started exhibiting problems or when the latent defect was discovered as the cause, but *Mexia* held that there is no requirement in Song–Beverly that a latent defect be discovered within a year of purchase.

*Mexia* itself relied heavily on *Moore v. Hubbard Johnson Lumber Co.*, 149 Cal. App.2d 236, 308 P.2d 794 (1957), an implied warranty of merchantability case that pre-dates Song–Beverly. In *Moore*, plaintiff purchased lumber from defendants to build a roof. The lumber turned out to have been infested with beetles that could not have been discovered through visual inspection. *Moore*, 149 Cal.App.2d at 241, 308 P.2d 794. *Mexia* cited *Moore* for the proposition that "although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known." *Mexia*, 174 Cal.App.4th at 1305, 95 Cal.Rptr.3d 285.

Mazda has cited to a number of cases that have looked at *Mexia*, most of which characterize *Mexia* and *Moore* as limited to situations where the product is unmerchantable at the point of purchase. *See* Reply at 4. In *Grodzitsky v. Am. Honda Motor Co., Inc.*, the court distinguished its case, which, according to plaintiffs' allegations, involved windows that worked perfectly well for years after purchase, from the beetle-infested lumber at issue in *Moore*, which was unusable from the start. 2013 WL 2631326 at *11–12, 2013 U.S. Dist. LEXIS 82746, at *35–36 (C.D.Cal. June 12, 2013) (Wilson, J.). In *Elias v. Hewlett–Packard Co.*, the court distinguished computers that did not have any issues until 17 months after purchase from the lumber in *Moore*, 903 F.Supp.2d 843, 852–53 (N.D.Cal.2012) (Koh, J.). In *Marchante v. Sony Corp. of Am.*, the same analysis was used to distinguish television sets that did not have any issues until after years of use from the lumber. 801 F.Supp.2d 1013, 1021–22 (S.D.Cal.2011) (Sammartino, J.).[1]

Also running through the cases cited by Mazda is the concern that if *Mexia* were

---

1. The other cases cited by Mazda, either commented upon *Mexia* in a way inessential to their decisions or were unpublished and so were not considered by this Court. This includes this Court's own comment on *Mexia* in *McVicar v. Goodman Global, Inc.*, 1 F.Supp.3d 1044, 1057–58 (C.D.Cal.2014) (commenting on *Mexia*, but ultimately dismissing plaintiffs' breach of implied warranty claim based on failure to plead dates of purchase).

not limited, *Mexia* would render the duration provision of the Song–Beverly Act meaningless because "[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period." *Marchante*, 801 F.Supp.2d at 1022; *see also Grodzitsky*, 2013 WL 2631326, at *10–11, 2013 U.S. Dist. LEXIS 82746, at *33–34.

Having reconsidered the case law as well as the text of the statute, the Court now is persuaded that a limited reading of *Mexia* is the more well-reasoned one. The Court holds that Ms. Peterson must allege more facts to show that her vehicle was unmerchantable within the implied warranty period set by the Song–Beverly Act in order to adequately plead a claim under the Song–Beverly Act. Ms. Peterson need not allege that she discovered the VVT assembly defect within that time, but there should at least be allegations that symptoms of the defect manifested during the warranty period.

Therefore, the Court DISMISSES Ms. Peterson's Song–Beverly claim WITHOUT PREJUDICE. To the extent that Ms. Peterson's UCL claim is based on Song–Beverly violations, her claim under the UCL is also DISMISSED WITHOUT PREJUDICE.

### 2. Ms. Peterson Adequately Pled a Claim Under the Unfairness Prong of UCL

Mazda argues that Ms. Peterson's claim that Mazda violated the "unfair business acts" prong of the UCL fails because (1) she fails to adequately allege a Song–Beverly violation; and (2) as a matter of law, it is not unfair conduct when a defect in a vehicle manifests only after an express warranty expires. Motion to Dismiss at 12. The Court disagrees.

As this Court has discussed in *McVicar v. Goodman Global, Inc.*, in the consumer context, California courts use three different tests to assess whether a business practice is "unfair" such that it violates the UCL. 1 F.Supp.3d 1044, 1053–54 (C.D.Cal.2014). Under the balancing test, an unfair business practice is "one in which the gravity of the harm to the victim outweighs the utility of the defendant's conduct." *Id.* (internal quotation marks omitted). The public policy test "requires that the UCL claim be tethered to some specific constitutional, statutory, or regulatory provisions." *Id.* (internal quotation marks omitted). The section 5 test, based on section 5 of the Federal Trade Commission Act, finds a business practice unfair if "(1) the consumer injury is substantial, (2) any countervailing benefits to consumers or competition do not outweigh the injury, and (3) the consumers could not reasonably avoid the injury." *Id.* The Ninth Circuit has cast doubt that the section 5 test is appropriate in consumer cases, since the section 5 test was developed for antitrust cases. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir.2007).

Mazda cites *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) in support of the proposition that, as a matter of law, selling a product with a defect that does not manifest itself until after the express warranty period has ended is not "unfair." *Clemens* in turn cites *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 839, 51 Cal.Rptr.3d 118 (2006), *as modified* (Nov. 8, 2006). *Daugherty* dismissed a UCL claim by applying the section 5 test and finding that the plaintiffs had not met the first element, substantial injury, because "the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers,

and accordingly does not constitute an unfair practice under the UCL." *Id.* at 839, 51 Cal.Rptr.3d 118. *Clemens* cites this passage in affirming the district court's granting of summary judgment against the plaintiff's "unfair" UCL claim, but does not explicitly use the section 5 test.

If it were clear that the section 5 test was the only test that could be applied in this case, this Court would be inclined to dismiss Ms. Peterson's case as she does not appear to contest Mazda's contention that her VVT assembly failed after Mazda's express warranty expired. However, it is not clear that the section 5 test is the only test that may be applied in these cases. Neither *Clemens* nor *Daugherty* holds that the section 5 test was the only test that may be applied in these cases. Since the California intermediate appellate courts are divided on how to determine what is "unfair" in the consumer action context, the Ninth Circuit still permits the use of the balancing test or the public policy test in the consumer context. *See Lozano,* 504 F.3d at 735–36 (upholding use of balancing test). Until the California Supreme Court offers a more authoritative instruction, this Court "errs toward ensuring a hearing on the merits," at least in the pre-answer stages of litigation. *McVicar,* 1 F.Supp.3d at 1054. Therefore, the Court will apply the other tests.

█ Under the balancing test, a business practice is unfair if the harm to the victim outweighs the utility of the defendant's conduct. Here, Ms. Peterson has alleged that Mazda "designed, manufactured, distributed, and sold [vehicles] with a defective VVT assembly that Mazda knew was defective and likely to fail and result in a catastrophic engine failure." FAC ¶ 90. She alleged that this defect created a safety risk for drivers and passengers because the consequences of the defect included partial and total engine failure. *Id.* ¶ 21. She also alleged that Mazda failed to replace her defective vehicle, or reimburse her for the $1000 she spent to repair it. *Id.* ¶¶ 55, 57, 77. Mazda has not made an argument about the utility of its conduct. Taking Ms. Peterson's allegations as true, this Court finds that Ms. Peterson has adequately stated a claim under the "unfair" prong of the UCL.

Accordingly, the Court DENIES Mazda's Motion as to Ms. Peterson's "unfair" UCL claim.

### 3. Mazda's Argument Regarding Heightened Pleading Requirement is Moot

Mazda argues that Ms. Peterson fails to meet the heightened pleading requirements under Federal Rule of Civil Procedure Rule 9(b) with regard to her claim that Mazda committed "unfair business acts" by misrepresenting and warranting that its new cars were free from defects and failing to disclose information about the VVT problem. Motion to Dismiss at 12–13. Since Ms. Peterson has consented to striking those allegations from the complaint, the Court treats this argument as moot.

### C. Leave to Amend

Mazda urges the Court to dismiss Ms. Peterson's claims with prejudice. Because Ms. Peterson may be able to cure the insufficiently pled claims through amendment, the Court grants Ms. Peterson leave to amend.

## IV. DISPOSITION

For the reasons described above, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Strike and Defendant's Motion to Dismiss as follows:

1. Defendant's Motion to Strike is DENIED as to paragraphs 2 (line 9), 11–

18, 38 (footnote 3), 47, and 92 (first sentence) of the FAC;

2. Defendant's Motion to Strike is GRANTED as to paragraph 92 (second, third, fourth, and fifth sentences) of the FAC;

3. Ms. Peterson's Song–Beverly claim and "unlawful" UCL claim are DISMISSED WITHOUT PREJUDICE;

4. Defendant's Motion to Dismiss is DENIED as to Ms. Peterson's "unfair" UCL claim;

Ms. Peterson shall file an amended complaint, if any, on or before **September 29, 2014.**

The Clerk shall serve this minute order on the parties.