GUSSE

v.

**DAMON CORPORATION**

**No. SACV05 1167 JVS RNBX.**

United States District Court,
C.D. California.

Jan. 17, 2007.

Martin W. Anderson, Anderson Law Firm, Santa Ana, CA, Jeffrey Kane, Jeffrey Kane Law Offices, Orange, CA, for Plaintiff.

Vincent James Axelson, Gates Odoherty Gonter and Guy, San Diego, CA, for Defendant.

SELNA, District Judge.

**Proceedings:** (In Chambers) Order Denying Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Richard Gusse ("Gusse") brings this action against defendant Damon Corp. ("Damon"). Damon is an Indiana corporation that manufactures recreational vehicles ("RVs"). On April 12, 2004, Gusse signed a purchase agreement at La Mesa RV in San Bernardino, California to buy an RV manufactured by Damon (the "Motorhome"). Damon contends that, as part of the sale, La Mesa RV delivered the Motorhome to Gusse in Arizona on April 15, 2004, so that Gusse could avoid paying California sales or use tax. Gusse began to experience certain problems with the Motorhome, and subsequently had the Motorhome repaired several times under Damon's warranty. Gusse alleges that the Motorhome continued to suffer from defects after receiving service.

Gusse filed this action alleging five causes of action for violation of California's Song–Beverly Consumer Warranty Act ("Song–Beverly Act") and the federal Magnuson–Moss Warranty Federal Trade Commission Improvement Act ("Magnuson Moss Act"). In the instant motion, Damon moves for summary judgment.

## II. *LEGAL STANDARD*

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

[A] moving party without the ultimate burden of persuasion at trial ... may carry its initial burden of production by either of two methods. [First, the] moving party may produce evidence negating an essential element of the nonmoving party's case, or [second], after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co. v. Fritz Companies,* 210 F.3d 1099, 1106 (9th Cir. 2000). If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. If the non-moving party meets this burden, then the motion will be denied. *Nissan,* 210 F.3d at 1103.

## III. DISCUSSION

### A. Song–Beverly Act Claims

Application of the Song–Beverly Act is expressly limited to goods sold in California. *See* Cal. Civ.Code §§ 1792, 1792.1, 1792.2, 1793.3, 1793.6. Damon moves for summary judgment as to Gusse's Song–Beverly Act claims, arguing that the Act does not apply because the "sale" of the Motorhome took place in Arizona.[1] Gusse argues that the sale did occur in California. The parties do not dispute the material facts underlying the sale.[2]

On March 26, 2004, in San Bernardino, California, Gusse negotiated the purchase of the Motorhome from La Mesa RV. At that time, La Mesa RV prepared a retail installment sale contract and a "Due Bill." (Def.Exhs.N, S.) In the due bill, La Mesa RV promised to perform certain work at the time of sale, including the installation of certain accessories and providing out of state delivery.[3] (Def.Exh. N.)

On April 12, 2004, in San Bernardino, California, Gusse and La Mesa RV signed an "Acknowledgment of Rewritten Contract," which mutually rescinded the contract entered into on March 26. (Def.Exh. T.) Gusse and La Mesa RV then executed a new retail installment sale contract for the Motorhome. (Def. Exh. O; Pl. Exh. 1.) The sale agreement contains no language requiring La Mesa RV to make delivery outside of California. (*Id.*) The reverse side of the sale agreement provides that "Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you." (*Id.*) The sale contract indicates that Gusse was not charged sales or use tax as part of the transaction, and it does not list any additional delivery fees. (*Id.*) There is no evidence of a due bill issued in conjunction with this sale contract.

Also on April 12, in San Bernardino, California, Gusse inspected the Motorhome and signed a "Purchase Acceptance Report" and "Pre–Delivery Inspection" form. (Pl.Exhs.2–3.) Gusse and La Mesa RV executed a "Vehicle/Vessel Transfer and Reassignment Form," California Department of Motor Vehicles ("DMV") Form 262. (Pl.Exh. 11.) This form provided, "I/We La Mesa RV Cntr Inc Central CA sell, transfer, and deliver the above vehicle/vessel to Richard J. Gusse or Elizabeth Gusse *on 04/12/2004 for the amount of $104098.00.*" (*Id.*) In addition, the form provided that the odometer mileage upon transfer of ownership was 2,886 miles. (*Id.*) Finally, Gusse was given keys to the Motorhome, and he used those keys to load his belongings into the Motorhome. (Gusse Decl., ¶ 9.)

On April 13, 2004, in San Bernardino, California, Gusse executed a "Miscellane-

1. Gusse's first and second causes of action allege claims under the Song–Beverly Act for breach of the implied warranties of merchantability and fitness. The third and fifth causes of action allege claims under the Song–Beverly Act for breach of express warranties. The fourth cause of action alleges a claim under the Song–Beverly Act for failure to promptly repurchase. In addition, Gusse's Magnuson–Moss Act claims rely upon application of the Song–Beverly Act or remedies provided therein.

2. Although Gusse submitted a statement of genuine issues with his opposition, he only disputes the legal conclusion that should be drawn from those facts. The Court will refer to Damon's exhibits as "Def. Exh.[]" and to Gusse's exhibits as "Pl. Exh. []."

3. The Due Bill promises:
 1. O/S delivery
 2. [blank]
 3. Install sat. dish—Manuel
 4. Install booth/dinnette
 5. 3M mask on right side comming [sic] off
 6. Contingent on boat selling—approx. 1–2 wks.
 (Def.Exh. O.)

ous Statements of Fact," California DMV Form 256, in which he stated: "Delivery out of state. [¶] Please issue title only for the attached vehicle that was delivered outside of Calif. to be driven out of state." (Def.Exh. U.) In addition, Gusse executed California Board of Equalization ("BOE") Form 447, in which he certified that the Motorhome was being purchased for use outside of California. (Def.Exh. P.) Finally, Gusse signed a "Buyer's Acknowledgment of Out of State Delivery Requirements" form created by La Mesa RV, in which he acknowledged that he could be liable for California sales tax and license fees if he operated the Motorhome on California highways within 90 days of delivery. (Def.Exh. R.)

On April 15, 2004, Gusse directed a third party driver hired by La Mesa RV to drive the Motorhome to a truck stop in Arizona. (Gusse Decl., ¶ 10.) Gusse and his wife met the driver in Arizona, where he again took possession of the Motorhome. (*Id.*) At that time, Gusse executed California BOE Form 448, acknowledging that the Motorhome had been delivered to him in Arizona and that he could be subject to California use tax if he used the Motorhome in California within 90 days. (Def.Exh. Q.)

■ Under the Song–Beverly Act, "sale" means "(1) the passing of title from the seller to the buyer for a price, or (2) a consignment for sale." Cal. Civ.Code § 1791(n). California law is clear that when title passes outside of California, the Song–Beverly Act does not apply. *See Cummins, Inc. v. Superior Ct.,* 36 Cal.4th 478, 30 Cal.Rptr.3d 823, 115 P.3d 98 (2005) (Song–Beverly Act did not apply to motorhome sold in Idaho and subsequently brought into California); *Davis v. Newmar Corp.,* 136 Cal.App.4th 275, 278, 38 Cal. Rptr.3d 690 (2006) (Song–Beverly Act did not apply to sale of motorhome negotiated in California where contract required delivery in Arizona); *Cal. State Elecs. Ass'n v. Zeos Int'l Ltd.,* 41 Cal.App.4th 1270, 1278, 49 Cal.Rptr.2d 127 (1996) (Song–Beverly Act did not apply to goods shipped from seller in Minnesota to buyer in California). Thus, the dispositive issue in this case is whether title passed in California or Arizona.

> Under the California Commercial Code, Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . .
>
> (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but
>
> (b) If the contract requires delivery at destination, title passes on tender there.

Cal. Com.Code § 2401(2).[4] Subsection (a) describes a "shipment" contract, whereas subsection (b) describes a "delivery" contract. Shipment contracts are the presumptive form in California. *Wilson v. Brawn of California, Inc.,* 132 Cal.App.4th 549, 556, 33 Cal.Rptr.3d 769 (2005); *Zeos,* 41 Cal.App.4th at 1277, 49 Cal.Rptr.2d 127.

---

4. The parties cite to Section 5901(d) of the California Vehicle Code, which provides "[a] sale is deemed completed and consummated when the purchaser of the vehicle has paid the purchase price, or, in lieu thereof, has signed a purchase contract or security agreement, and has taken physical possession or delivery of the vehicle." California courts, however, have relied on the Commercial Code when determining where a sale occurred for purposes of the Song–Beverly Act, even in cases involving motor vehicles. *See Davis,* 136 Cal.App.4th at 278, 38 Cal.Rptr.3d at 692 (citing Cal. Com.Code § 2401). Importantly, Section 5901(d) makes no reference to the passing of title, which is the dispositive issue under the Song–Beverly Act. *See* Cal. Civ. Code § 1791(n).

A contract is ambiguous if it is capable of more than one reasonable interpretation. *Badie v. Bank of Am.,* 67 Cal. App.4th 779, 798, 79 Cal.Rptr.2d 273 (1998). Where the contractual language is clear and explicit, however, it governs. *Bank of the West v. Superior Ct.,* 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). "Interpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence." *Badie,* 67 Cal.App.4th at 799, 79 Cal.Rptr.2d 273.

█ The due bill, which is part of the contract for sale negotiated on March 26, 2004, promises "out of state delivery." However, the March 26 contract was mutually rescinded on April 12, 2004. Following rescission, the parties negotiated a new sale contract. Significantly, the April 12 sale agreement contains no provision promising "out of state delivery."

Damon urges the Court to look to evidence of the parties' actions and intent in construing the terms of that contract. This presumes that the contract is ambiguous. To the extent that the April 12 sale agreement requires delivery at a specific time or location, it provides "Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you." The undisputed evidence is that the sale agreement was signed on April 12, 2004 in San Bernardino, California. However, it is also clear from the surrounding facts that the parties intended for the Motorhome to be transported to Arizona as part of the sale, so as to legally avoid California sales tax. Specifically, Gusse signed California DMV and BOE forms, as well as the "Buyer's Acknowledgment of Out of State De-livery Requirements" form provided by La Mesa RV.

The fact that the parties may have agreed to transport the Motorhome to Arizona for tax purposes does not, however, necessarily create a delivery contract. Importantly, the contract does not provide for delivery to a specific location and it does not require that the Motorhome be tendered for Gusse's acceptance in Arizona. To the contrary, La Mesa RV required Gusse to inspect and accept the Motorhome on April 12, 2004, before it was shipped. At that time, Gusse signed the "Purchase Acceptance Report" and "Pre-Delivery Inspection" form. In addition, Gusse and La Mesa RV jointly executed the DMV "Vehicle/Vessel Transfer and Reassignment Form," which documented the odometer mileage at the time of sale and delivery. La Mesa RV then hired a third party driver to take the Motorhome wherever Gusse wanted it transported, and Gusse directed the driver to transport the Motorhome to Arizona. Gusse was also required to provide proof of insurance before the Motorhome was shipped. These facts are consistent with a shipment contract, which is the presumptive form in California. The Court therefore finds that the contract is one which required or authorized La Mesa RV to transport the Motorhome, but did not require delivery at the destination. Accordingly, title passed to Gusse at the time and place of shipment. Cal. Com.Code § 2401(2)(a); *Zeos,* 41 Cal.App.4th at 1278, 49 Cal.Rptr.2d 127.[5]

█ Damon argues that this leads to an absurd result, which allows Gusse to have his cake and eat it too. The flaw in Da-

---

**5.** The instant case is distinguishable from *Davis v. Newmar Corp.* In *Davis,* "one of the terms of the sale required [the dealer] to deliver the motor home to [the buyer] in Nevada." *Davis,* 136 Cal.App.4th at 276, 38 Cal.Rptr.3d 690. Here, the parties may have agreed to have the Motorhome transported to Arizona, but "delivery" in Arizona was not a contract term.

mon's argument is that protection under the Song–Beverly Act and exemption from California sales tax are not mutually exclusive. The Song–Beverly Act requires that title to the goods pass in California. *See* Cal. Civ.Code § 1791(n); *Zeos,* 41 Cal. App.4th at 1278, 49 Cal.Rptr.2d 127. However, a sale is exempt from sales tax if the contract of sale requires the goods to be shipped to a point not in California, and the goods are actually shipped out of the state. *See* Cal. Tax & Rev.Code § 6396.[6] As used in Section 6396 of the Tax and Revenue Code, " 'delivery' is not synonymous with 'passage of title' to the goods (although the two may occur at the same time). Rather, it is a term of art denoting the point at which ownership is transferred, and the goods are no longer property of the seller." *Chevron U.S.A. Inc. v. State Bd. of Equalization,* 53 Cal.App.4th 289, 296, 61 Cal.Rptr.2d 608 (1997) (citing *Satco, Inc. v. State Bd. of Equalization,* 144 Cal.App.3d 12, 17, 192 Cal.Rptr. 449 (1983)). Thus, a consumer good that is sold and shipped from California to another state pursuant to a shipment contract is "sold in California" for purposes of the Song–Beverly Act, but is exempt from California sales tax.[7]

Although the instant motion was filed by Damon, the Court may nevertheless grant summary judgment in favor of Gusse if it determines that the issue has been fully ventilated. *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311–12 (9th Cir.1982). The parties do not dispute the material facts underlying the sale of the Motorhome. As a matter of law, the Court finds that title to the Motorhome transferred to Gusse in California. Accordingly, the protections of the Song–Beverly Act apply, and the Court grants summary judgment in favor of Gusse on this issue.[8]

### B. *Magnuson–Moss Act Claims*

The Magnuson–Moss Act creates federal minimum disclosure and content requirements for written consumer product warranties and gives consumers a private cause of action for breach of warranty. *See* 15 U.S.C. §§ 2301, *et seq.* Damon seeks summary judgment on Gusse's first

---

6. Section 6396 provides:
 There are exempted from the computation of the amount of sales tax the gross receipts from the sale of tangible personal property which, pursuant to the contract of sale, is required to be shipped and is shipped to a point outside this state by the retailer by means of: (a) facilities operated by the retailer, or (b) delivery by the retailer to a carrier, customs broker or forwarding agent, whether hired by the purchaser or not, for shipment to such out-of-state point. Cal. Tax & Rev.Code § 6396.

7. Given the explosive growth of retail internet sales, this situation is likely quite common. For example, imagine a buyer who orders a box of widgets from a California retailer, to be shipped to an address in Arizona. The retailer delivers the widgets to its parcel carrier of choice, who in turn ships the widgets to the buyer in Arizona. Title to the widgets would pass in California upon shipment, and the Song–Beverly Act would apply. *See* Cal. Com.Code § 2401(2)(a); *cf. Zeos,* 41 Cal.

App.4th at 1278, 49 Cal.Rptr.2d 127 (Song–Beverly Act did not apply to goods shipped by Minnesota retailer to buyer in California because title passed in Minnesota upon shipment). However, because the retailer delivered the widgets to a carrier for shipment to Arizona as required by the contract, and the widgets were actually delivered in Arizona, the sale is exempt from California sales tax. *See* Cal. Tax & Rev.Code § 6396.

8. The Court would reach the same result if it considered the extrinsic evidence consisting of the various DMV documents and acknowledgments. There is no dispute as to the facts established by the extrinsic evidence, and there is no dispute about the credibility of the evidence. In such a case, the interpretation of the contract is the duty of the Court, and the jury plays no role. *Herring v. Teradyne, Inc.,* 256 F.Supp.2d 1118, 1124–25 (S.D.Cal. 2002).

and second causes of action, for breach of the implied warranties, and the third and fifth causes of action, for breach of express warranty. In addition, Damon argues that Gusse has alleged no damages for which he can recover under the Magnuson–Moss Act.

### 1. *Implied Warranty*

Gusse's first and second causes of action allege breaches of the implied warranties of merchantability and fitness. Damon argues that these claims must fail because there is no viable state law claim upon which the Magnuson–Moss claims can be based.

■ Although the Magnuson–Moss Act creates a separate federal cause of action for breach of an implied warranty, courts must look to the relevant state law to determine the meaning and creation of any implied warranty. *See* 15 U.S.C. § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product."). As alleged in the Complaint, the first and second causes of action rely on the creation of implied warranties of merchantability and fitness under California's Song–Beverly Act.

Damon argues that Gusse's claims fail because the Song–Beverly Act does not apply. In light of the Court's conclusion that the Song–Beverly Act applies, how-

ever, Damon's motion for summary judgment on the implied warranty claims under the Magnuson–Moss Act must be denied.[9]

### 2. *Express Warranty*

Gusse's third and fifth causes of action allege breaches of express warranties. At the time of sale, Gusse was provided with Damon's express warranties for the coach portion of the Motorhome. (*See* Def.'s Notice of Lodgement, Exh. A.) This warranty was a limited, rather than full, warranty.[10] The warranty provides for the repair or replacement of materials, components, or parts that were manufactured and finally assembled by Damon, guaranteeing that the RV will be free from defects in material and workmanship attributable to Damon during the warranty period. (*Id.* at 5.) The warranty expressly excludes certain items and services from coverage. (*Id.* at 5–6.) The warranty expressly disclaims incidental and consequential damage to the extent allowed by state law. (*Id.* at 7.)

■ Breach of an express limited warranty provides a federal cause of action under 15 U.S.C. § 2310(d)(1). *See Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 919 n. 4 (9th Cir.2005). However, the federal remedies described in 15 U.S.C. § 2304(a) only apply to full warranties. (*Id.*) The Magnuson–Moss Act is "virtually silent as to the amount and type

---

**9.** Although Damon also argues that the implied warranty claims should be dismissed because there is no vertical privity between Gusse and the manufacturer, this argument ignores the plain language of the Song–Beverly Act, which defines implied warranties for purposes of a federal Magnuson–Moss Act cause of action. *See* Cal. Civ.Code § 1792 ("[E]very sale of consumer goods that are sold at retail in this state shall be accompanied by *the manufacturer's* and the retail seller's implied warranty that the goods are merchantable." (emphasis added)); Cal. Civ.Code § 1792.1 ("Every sale of consumer goods that

are sold at retail in this state by a manufacturer who has reason to know at the time of the retail sale that the goods are required for a particular purpose and that the buyer is relying on the manufacturer's skill or judgment to select or furnish suitable goods shall be accompanied by such *manufacturer's implied warranty of fitness.*" (emphasis added)).

**10.** Gusse does not contend that the express warranty provided by Damon is a full warranty, and it does not appear to meet the standards for a full warranty established by 15 U.S.C. § 2404(a).

of damages which may be awarded for breach of an express limited warranty." *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir.1979). Thus, courts must look to state substantive law to determine the remedies for breach of an express limited warranty.

Damon argues that Gusse's claims must fail because no cause of action exists under Arizona law, citing *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 126 P.3d 165, 169–70 (2006). However, in light of the Court's conclusion that the Motorhome was delivered in California, the Court finds that California law applies. *See* Restatement (Second) of Conflict of Laws § 191 (rights created by a contract for sale of an interest in a chattel determined "by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless, with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied"); *De Shazer v. Nat'l RV Holdings, Inc.*, 391 F.Supp.2d 791, 794 (D.Ariz.2005). Accordingly, Damon's motion for summary judgment on the express warranty claims under the Magnuson–Moss Act must be denied.[11]

### 3. *Damages*

Finally, Damon argues that Gusse's Magnuson–Moss Act claims must fail because he cannot prove damages.

#### a. *Song–Beverly Act Remedies*

Damon argues that all damages alleged by Gusse are based entirely on the Song–Beverly Act. In light of the Court's conclusion that the Song–Beverly Act applies, summary judgment must be denied on this issue.

#### b. *Restitution Damages*

■ Damon argues that Gusse cannot seek revocation or restitution damages because those damages are only available against the actual seller of goods, and not the manufacturer. However, California law provides for such restitution by the manufacturer. *See* Cal. Civ.Code. §§ 1793.2(d), 1794(b). In light of the Court's conclusion that the Song–Beverly Act applies, Damon's motion for summary judgment on this issue must be denied.

#### c. *Incidental and Consequential Damages*

Damon argues that Gusse cannot recover incidental or consequential damages because the express warranty contains a valid disclaimer of those damages. However, the Song–Beverly Act expressly allows for recovery of incidental and consequential damages. *See* Cal. Civ.Code § 1794(b)(2) (measure of buyer's damages where goods have been accepted includes Sections 2714 and 2715 of the California Commercial Code); Cal. Com.Code § 2714(3) ("In a proper case any incidental and consequential damages under Section 2715 also may be recovered."); Cal. Com.Code § 2715 (buyer's incidental and consequential damages); *see also* Cal. Civ.Code §§ 1793.2(d)(2)(A), (B) ("The manufacturer also shall pay for ... any incidental damages to which the buyer is entitled under

---

11. The Court would reach the same conclusion even if the contract required deliver in Arizona. The contract for sale was negotiated and executed in California, Gusse lived in California at the time of the sale, and Gusse chose to prosecute this case in California. Damon, in contrast, is an Indiana corporation. California has a much more significant relationship to the transaction and the parties than does Arizona. Accordingly, California law would apply. *See De Shazer*, 391 F.Supp.2d at 794 (applying Arizona law to Magnuson–Moss Act analysis where vehicle was sold in Arizona but delivered in New Mexico).

Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer."). The provisions of the Song Beverly Act may not be waived. *See* Cal. Civ.Code § 1790.1 ("Any waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void."). In light of the Court's conclusion that the Song–Beverly Act applies, summary judgment must be denied on this issue.

#### d. *Civil Code Section 3345*

Damon argues that Gusse cannot seek treble damages under Section 3345 of the California Civil Code because it would amount to a double recovery. However, the plain language of the statute makes clear that such recovery is intended by allowing imposition of a civil penalty "up to three times greater" than the civil penalty already authorized by statute. *See* Cal. Civ.Code § 3345(b).[12] The Song–Beverly Act provides for a civil penalty "which shall not exceed two times the amount of actual damages" where the buyer establishes a willful failure to comply with warranty obligations. Cal. Civ.Code § 1794(c); *see also* Cal. Civ.Code § 1794(e)(1) (providing for civil penalty of up to two times the actual damages for violation of Section 1793.2(d)(2)). Section 3345(b) explicitly authorizes that these civil penalties be increased up to threefold.

12. Section 3345(b) provides:
Whenever a trier of fact is authorized by a statute to impose a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter, [and the trier of fact makes certain affirmative findings], it may impose a fine, civil penalty or other penalty, or other remedy in

In addition, Damon argues that Gusse lacks evidence to show that it knew or should have known he was a senior citizen. However, Gusse creates a genuine issue of material fact with evidence that he advised Will Cook, a Damon service department supervisor, that he was a senior citizen during various telephone calls, including one on July 25, 2005. (*See* Gusse Decl., ¶ 87.) Accordingly, the Court finds that summary judgment must be denied on this issue.

### IV. *CONCLUSION*

For the foregoing reasons, Damon's motion is denied. Summary judgment is granted in favor of Gusse on the issue of whether the Motorhome was sold in California.

an amount up to three times greater than authorized by statute, or, where the statute does not authorize a specific amount, up to three times greater than the amount the trier of fact would impose in the absence of that affirmative finding.
Cal Civ.Code § 3345(b).