Filed 12/3/24  Ritter v. Eclipse Recreational Vehicles CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DARRICK RITTER, | |
| Plaintiff and Appellant, | G064333 |
| v. | (Super. Ct. No. CVRI2103777) |
| ECLIPSE RECREATIONAL VEHICLES, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, Irma Poole Asberry, Judge. Affirmed in part and reversed in part.

McMahon Lynch Law Firm, Robert J. Lynch and Matthew A. Slater for Plaintiff and Appellant.

Wilson Turner Kosmo, Robert A. Shields, Alexi Rae Silverman; Baute Crochetiere Hartley & McCoy, Mark D. Baute, Gina McCoy and Artyom Baghdishyan for Defendant and Respondent.

\*        \*        \*

In September 2012, plaintiff Darrick Ritter purchased a trailer manufactured by defendant Eclipse Recreational Vehicles, Inc. (Eclipse). The trailer came with a one-year written manufacturer's warranty.

In January 2018, Ritter noticed "the front of the vehicle felt like it was opening and closing like a mouth when you are driving down the road, where the wall is separating from the frame." A dealer inspected the trailer and "found problems with the welds on the passenger side."

In October 2019, Eclipse told Ritter that it would attempt a repair. But in March 2020, after inspecting the trailer, Eclipse said it could not do the repairs, and refused to replace or repurchase the trailer.

In August 2021, Ritter sued Eclipse alleging three causes of action: a violation of the express warranty, a breach of the implied warranty of merchantability, and a violation of the federal warranty act.

Eclipse filed a motion for summary judgment, or in the alternative, a motion for summary adjudication. The trial court granted the motion for all three causes of action. Ritter filed an appeal.

In this review we "'consider all of the evidence and all of the inferences reasonably drawn therefrom, and must view such evidence and such inferences in the light most favorable to the opposing party.'" (*Conway v. County of Tuolumne* (2014) 231 Cal.App.4th 1005, 1013.)

We agree with the court's ruling as to Ritter's express warranty claim. Ritter filed suit in 2021, well after the four-year statute of limitations had expired, which accrued from the date of delivery in 2012.

But we disagree with the court's ruling as to Ritter's implied warranty of merchantability claim. "The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." (*Mexia v. Rinker Boat, Inc.* (2009) 174 Cal.App.4th 1297, 1304 (*Mexia*).) Here, given

2

the evidence regarding a problem with welding, and viewing the evidence in the light most favorable to Ritter, we find there is a reasonable inference that the issue with the wall separating from the trailer's frame was due to a latent defect present at the time of the sale, thereby tolling the statute of limitations. (See *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 646.)

Ritter's remaining federal warranty cause of action is derivative and depends on the validity of the two state claims, so it survives as to the state implied warranty claim.

In sum, we affirm the trial court's granting of Eclipse's motion as to Ritter's express warranty claim (the first cause of action), but we reverse as to the implied warranty claim (the third cause of action), and the federal warranty claim (the second cause of action).

I.

FACTS AND PROCEDURAL BACKGROUND

On or about September 10, 2012, Ritter purchased a 2013 Eclipse Attitude Trailer from Best RV Center in Turlock, California for about $50,000. The trailer came with a written, one-year limited manufacturer's warranty. The warranty provided, in part:

"**Eclipse Recreational Vehicles, Inc.** (noted as *Eclipse RV*) warrants the original owner that your new travel trailer or fifth wheel is warranted under normal use to be free from manufacturing defects in materials and workmanship for the period of one (1) year except as herein limited. This warranty comes in affect [*sic*]the day of the first retail purchase and only covers the first retail purchaser. [¶] This warranty is limited to repairing or replacing any part(s) believed by *Eclipse RV* to be defective in material or workmanship under normal use."

3

Sometime in 2014, Ritter discovered issues with the trailer's bedroom sliding glass door. Ritter reported the issues to Eclipse; they were able to resolve the problem without charge.

On or about January 2018, Ritter noticed as he was driving on the freeway from Las Vegas that the siding of the trailer on the passenger side was moving. Ritter said that "the front of the vehicle felt like it was opening and closing like a mouth when you are driving down the road, where the wall is separating from the frame. This issue had never arisen before and it is my understanding that the issue was wholly and completely unrelated to the previously [completed repairs]."

In 2018, Ritter said he repeatedly attempted to contact Eclipse to repair the frame separation issue, but he "received little or no response."

In 2019, Ritter took the trailer to Straight Line RV, a dealership located in Springfield, Oregon, for an unrelated problem. When Straight Line RV looked at the frame separation issue, "they found problems with the welds on the passenger side." "Straight Line RV determined that the issue was due to cracking in the wheel chassis and upper deck frame and the walls, but was unable to perform the necessary repairs."

Straight Line RV contacted Eclipse and Lippert Components, Inc. (Lippert), a trailer component manufacturer, to see if those companies could complete the repairs. Lippert agreed to send a technician and agreed to perform "goodwill repairs" if it determined the issues were due to problems with its manufactured components.

On or about August 22, 2019, Lippert performed an inspection of the trailer and determined that the frame separation issue was not due to a failure of any of its components.

A representative from Lippert sent an e-mail to Danny Zacarias,

4

a representative from Eclipse. The e-mail stated: "In conversation with [our] tech, he mentioned that the dealer had done a repairs to the front cap due to impact damage which was submitted for an insurance claim. Is there by any chance any pictures or information you can share with us? [Lippert] will stand behind the original offer of goodwill repair to the upper deck repair only, as mentioned in my previous email."

Zacarias responded: "At this point we need to offer something for the customer to get his unit back together? Did the Lippert tech take it apart or did a dealer take it [apart.]"

On October 29, 2019, Ritter received an e-mail from another representative from Eclipse. The e-mail stated: "Hi Darrick[:] [¶] I talked to Danny this morning on your trailer. Danny has auth'd us to inspect trailer once it comes in. You will need to set up transportation to get unit here, I do have a transport company that we use. I can give you their contact information. Right now we would be able to set up a date to do repairs, looking mid January."

In March 2020, Ritter brought the trailer to Eclipse's facility in Riverside, California. On March 9, 2020, after inspecting the trailer, Eclipse informed Ritter "that they would not perform any repairs because the side wall purportedly delaminated due to what they claim was 'lack of maintenance.'"

*Court Proceedings*

On August 20,2021, Ritter sued Eclipse alleging three causes of action: a violation of Eclipse's express warranty under the state Song-Beverly Warranty Act (the Song-Beverly Act); a breach of the implied warranty of merchantability under the Song-Beverly Act; and a violation of the federal

Magnuson Moss Warranty Act.

On July 26, 2022, Eclipse filed a motion for summary judgment, or in the alternative, a motion for summary adjudication.[1]

On October 25, 2022, the trial court granted Eclipse's motion. As to Ritter's express warranty claim, the court found that "the statute of limitations bars this claim." As to the implied warranty claim, the court found that Ritter "provides no evidence that his defect is latent and existed during the duration period[.] He provides no evidence that the statute of limitations should be tolled." As to Ritter's federal warranty claim, the court found that such claims "'stand or fall with his express and implied warranty claims under state law.' Since it appears that the Song-Beverly claims fail, it also appears this cause of action will fail too."

II.

DISCUSSION

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party bears the burden to make a prima facie showing that no triable issue of material fact exists. (*Id.* at p. 845.) If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Ibid.*)

---

[1] "Generally, an order granting summary adjudication is an intermediate order which is 'reviewable on appeal from the *final judgment* in the action.' [Citation.] However, such an order is appealable if it effectively disposes of the entire matter." (*Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1070–1071.)

.

6

"A defendant may show entitlement to summary judgment either by showing one or more elements of each cause of action cannot be stablished, or by establishing an affirmative defense." (*Sacramento County Deputy Sheriffs' Assn. v. County of Sacramento* (1996) 51 Cal.App.4th 1468, 1476.) "The expiration of the applicable statute of limitations is one such complete defense." (*Genisman v. Carley* (2018) 29 Cal.App.5th 45, 49.)

"A defendant moving for summary judgment based on the affirmative defense of the statute of limitations carries its burden by presenting evidence establishing that the plaintiff's claim is time barred. [Citation] 'It then falls to plaintiff[] to counter with evidence creating a dispute about a fact relevant to that defense.' [Citation.] That is, the plaintiff must submit evidence that would allow a 'reasonable trier of fact [to] find in plaintiff['s] favor on the statute of limitations issue.'" (*Genisman v. Carley*, *supra*, 29 Cal.App.5th at p. 49.)

"A party may move for summary adjudication as to one or more causes of action . . . ." (Code Civ. Proc., § 437c, subd. (f)(1).) "A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment." (Code Civ. Proc., § 437c, subd. (f)(2).)

We review a ruling on a motion for summary judgment/summary adjudication de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67–68.) Our review "'must consider all of the evidence and all of the inferences reasonably drawn therefrom, and must view such evidence and such inferences in the light most favorable to the opposing party.'" (*Conway v. County of Tuolumne, supra,* 231 Cal.App.4th at p. 1013.)

We shall analyze Ritter's three causes of action in the following order: A) the alleged violation of the express warranty; B) the alleged breach

7

of the implied warranty of merchantability; and C) the alleged violation of the federal warranty act.

*A. The Express Warranty*

Ritter claims the trial court erred by granting Eclipse's motion as to his express warranty cause of action. We disagree.

The Song-Beverly Act generally "provides enhanced remedies to consumers who buy new consumer goods accompanied by a manufacturer's express warranty." (*Kiluk v. Mercedes-Benz USA, LLC* (2019) 43 Cal.App.5th 334, 336.) "The Act regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties." (*Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 213 (*Krieger*).)

"The Act itself contains no express limitations period for a civil action." (*Krieger, supra,* 234 Cal.App.3d at pp. 213–214.) Rather, the statute of limitations under the Song-Beverly Act is governed by the limitations period as stated in section 2725 of the California Uniform Commercial Code. (*Mexia, supra,* 174 Cal.App.4th at p.1306.)

"An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." (Cal. U. Com. Code, § 2725, subd. (1).)[2] The

---

[2] Further undesignated statutory references are to the California Uniform Commercial Code.

8

four-year limitations period for a breach of an express warranty claim accrues (begins to run) from the date of delivery. (*Cardinal Health 301, Inc. v. Tyco Electronic*s Corp. (2008) 169 Cal.App.4th 116, 129 (*Cardinal*).)

Here, Ritter received the trailer on September 10, 2012. Eclipse's express warranty was for a period of one year. Applying the four-year statute of limitations, which began to run on the date of delivery, the latest Ritter could have filed the express warranty claim was on September 10, 2016. (See § 2725, subd. (1).) Ritter filed the instant lawsuit on August 20, 2021, nearly five years after the statute of limitations had expired.

Thus, we find that the trial court properly granted Eclipse's motion as to Ritter's express warranty cause of action because Eclipse established a complete defense under the statute of limitations. (See *Genisman v. Carley, supra*, 29 Cal.App.5th at p. 49.)

Ritter argues the statute of limitations was tolled under the "future performance" exception. (See § 2725, subd. (2).) We disagree.

"A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods* and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (§ 2725, subd. (2), italics added.)

"Thus, under section 2725, the general limitations rule for a breach of warranty cause of action *is* four years from the date the goods are delivered (regardless of the date the buyer discovers the breach), *unless* the 'warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance . . . .' (§ 2725, subd. (2).) If the [future performance exception] applies, the accrual date is the time the breach 'is or should have been discovered.'" (*Cardinal, supra,* 169

9

Cal.App.4th at p. 129.)

The future performance exception "applies only when the seller has expressly agreed to warrant its product *for a specific and defined period of time*." (*Cardinal, supra,* 169 Cal.App.4th at p. 130.) "California Uniform Commercial Code section 2725 reflects the drafters' intention to establish a reasonable period of time—four years—beyond which sellers need not worry about stale warranty claims. [Citation.] Nonetheless, 'a buyer and a seller can freely negotiate to extend liability into the future . . . [but] an express warranty which makes no reference at all to any future date should not be allowed to extend past the limitations period. . . .'" (*Carrau v. Marvin Lumber & Cedar Co.* (2001) 93 Cal.App.4th 281, 291.)

Here, Eclipse's express written warranty provided: "**Eclipse Recreational Vehicles, Inc.** (noted as *Eclipse RV*) warrants the original owner that your new travel trailer or fifth wheel is warranted under normal use to be free from manufacturing defects in materials and workmanship *for the period of one (1) year* except as herein limited. This warranty comes in affect [*sic*] the day of the first retail purchase and only covers the first retail purchaser." (Italics added.)

Eclipse's written express warranty did not explicitly—or implicitly—extend its timeframe beyond one year, so the future performance exception to the four-year statute of limitations does not apply.

Ritter argues that *Krieger, supra*, 234 Cal.App.3d 205, compels a different result. We disagree.

In *Krieger*, a buyer purchased a car from a dealer, who provided a warranty, which stated "that all defects would be repaired for a period of 36 months or within the first 36,000 miles of use." (*Krieger, supra*, 234 Cal.App.3d at p. 216.) Almost immediately, the buyer experienced problems

10

with the car. (*Id*. at p. 209.) Just over four years after the purchase, the buyer sued the dealer for a breach of warranty and other related claims. (*Id*. at p. 210.) The trial court granted the dealer's motion for summary judgment on the basis that the statute of limitations had expired, but the Court of Appeal disagreed and reversed. (*Id*. at p. 219.) The court found that there was an issue of material fact as to when the statute of limitations accrued. (*Ibid*.) The court reasoned that the action did not accrue on tender of delivery, but at some later date based on the future performance exception. This ruling was based on the terms explicitly included in the written warranty: the "period of 36 months or within the first 36,000 miles of use." (*Id*. at p. 216.)

Here, unlike *Krieger*, Eclipse's express warranty does not include any language extending its coverage beyond one year; therefore, the statute of limitations accrued from the statutory default date: the date of delivery. (See § 2725, subd. (1).) The future performance exception does not apply, and the *Krieger* opinion does not alter our analysis.

Ritter also cites the following language from *Krieger*: "A promise to repair defects that occur during a future period is the very definition of *express warranty* of future performance . . . ." (*Krieger*, *supra*, 234 Cal.App.3d at p. 217, italics added.) Based on this quotation, Ritter argues the  e-mails he received from Eclipse in 2019 "are an *express warranty* that [Eclipse] would repair the vehicle." **(**Italics added.) We disagree.

Under the Song-Beverly Act: "'Express warranty' means: [¶] (1) A written statement *arising out of a sale* to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance . . . ." (Civ. Code, § 1791.2, subd. (a), italics added.)

11

To establish an express warranty under California's Song-Beverly Act, "the plaintiff must identify a 'specific and unequivocal written statement' about the product that constitutes an 'explicit guarantee.'" (*T & M Solar and Air Conditioning, Inc. v. Lennox International Inc.* (N.D. Cal. 2015) 83 F.Supp.3d 855, 875.)

Here, the e-mail from Eclipse's employee Danny Zacarias stated: "At this point we need to offer something for the customer to get his unit back together? Did the Lippert tech take it apart or did a dealer take it part[.]"[3] A second e-mail from a different Eclipse employee stated: "Hi Darrick[:] [¶] I talked to Danny this morning on your trailer. Danny has auth'd us to inspect trailer once it comes in. You will need to set up transportation to get unit here, I do have a transport company that we use. I can give you their contact information. Right now we would be able to set up a date to do repairs, looking mid January."

We find these e-mails do <u>not</u> establish an express warranty.

To begin with, the e-mails sent by the manufacturer Eclipse were sent in 2019, about seven years after Ritter had purchased the trailer from a dealer in 2012. Therefore, the e-mails did not *arise out of the sale* of the trailer, but arose seven years after the sale had concluded. (See § 1791.2, subd. (a) ["'Express warranty' means: [¶] (1) A written statement *arising out of a sale* to the consumer of a consumer good"], italics added.)

Further, the e-mails are not so specific and/or unequivocal as to establish an explicit guarantee. They do <u>not</u> state that Eclipse is agreeing "to preserve or maintain the utility or performance of the" trailer, "or provide compensation if there is a failure in utility or performance." (See § 1791.2,

---

[3] Ritter was cc'd on the e-mail between Eclipse and Lippert.

subd. (a)(1).) Indeed, the first e-mail is in the form of a question: "At this point we need to offer something for the customer to get his unit back together?" And the second e-mail seems to merely indicate that Eclipse is agreeing to "inspect" the trailer, and also to set up a date for future repairs, depending on the outcome of its on-site inspection.

In sum, we find that the trial court properly granted Eclipse's motion as to Ritter's express warranty claim.

## B. The Implied Warranty of Merchantability

Ritter claims the trial court erred by granting Eclipse's motion as to his implied warranty of merchantability cause of action. We agree.

In addition to addressing express warranties, the Song-Beverly Act also provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." (Civ. Code, § 1792.)

"'Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law.'" (*Megaa RV Corp. v. HWH Corp.* (2014) 225 Cal.App.4th 1318, 1330.) Consequently, the implied warranty of merchantability applies despite its omission from a purchase contract. (See *Ibid*.)

"Merchantability" means that "consumer goods," among other things, "are fit for the ordinary purposes for which such goods are used." (Civ. Code, § 1791.1, subd. (a)(2).) The implied warranty "does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" (*American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1296.)

The Song-Beverly "Act is '"manifestly a remedial measure,

13

intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.”’” (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 972.)

“The duration provision in the Song-Beverly Act provides that the ‘duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer.’” (*Mexia, supra,* 174 Cal.App.4th at p. 1304.) The applicable statute of limitations is four years under section 2725. (*Id.* at p. 1306.)

However, “[t]he implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale. [Citations.] Indeed, ‘[u]ndisclosed latent defects . . . are the very evil that the implied warranty of merchantability was designed to remedy.’ [Citation.] In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery.” (*Mexia, supra,* 174 Cal.App.4th at pp. 1304–1305.)

In *Mexia,* the plaintiff purchased a boat, but two years later its engine corroded, and repairs were necessary. (*Mexia, supra,* 174 Cal.App.4th at pp. 1301–1302.) The plaintiff sued the manufacturer alleging a breach of the implied warranty of merchantability. (*Id.* at p. 1300.) The plaintiff alleged that the malfunctions were caused by latent defects that existed at the time of purchase. (*Id.* at p. 1301.) The trial court granted defendant’s demurrer because the plaintiff did not point to any defects requiring repairs within a year of the boat’s purchase (the period of the express warranty). (*Id.* at pp. 1301, 1308.) The appellate court reversed, finding that “the fact that the

14

alleged defect resulted in destructive corrosion two years after the sale of the boat does not necessarily mean that the defect did not exist at the time of sale." (*Id.* at p. 1308.) The court concluded that because the plaintiff could produce some evidence that the corrosion was the result of a latent defect that existed at the time of sale, it was improper to dismiss the plaintiff's claim for breach of implied warranty. (*Ibid.*)

"Indeed, that a defect first appears after a warranty has expired does *not* necessarily mean the defect did not exist when the product was purchased." (*Donlen v. Ford Motor Co.* (2013) 217 Cal.App.4th 138, 149.) "This minimum guarantee in the implied warranty of merchantability protects not only the vehicle purchaser, but other motorists, passengers, pedestrians, and the public generally." (*Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1547.)

A "latent defect" is defined as: "A hidden or concealed defect. One which could not be discovered by reasonable and customary observation or inspection; . . . [¶] Defect of which owner has no knowledge, or which, in exercising reasonable care, he should have had no knowledge. [Citations.] A latent defect . . . is one not discoverable by inspection made with ordinary care . . . ." (Black's Law Dict. (6th ed. 1990) p. 883, col. 2.)

Here, Ritter bought the trailer in September 2012, and he did not have any repair issues during the first year. In January of 2018, while driving "on the freeway back from Las Vegas," Ritter "first noticed that the siding of the vehicle on the passenger side was moving." Ritter "found that the front of the vehicle felt like it was opening and closing like a mouth when you are driving down the road, where the wall is separating from the frame."

In 2019, Straight Line RV "found problems with the welds on the passenger side that they said were causing the problems related to frame

separation on the passenger side. Straight Line RV determined that the issue was due to cracking in the wheel chassis and upper deck frame and the walls but was unable to perform the necessary repairs." In March 2020, Eclipse inspected the trailer, but informed Ritter "that they would not perform any repairs because the side wall had purportedly delaminated due to what they claimed was 'lack of maintenance.'" [4]

Based on the foregoing evidence, Ritter argues "that there is an inference that the defect existed at the time of sale, given that the problem was with the welds and that it had never happened before . . . and that the facts must be liberally construed to support that inference."

Conversely, based on the same evidence, Eclipse argues "a *more reasonable* inference from the evidence is that any defect in the trailer manifesting six years after purchase was most likely due to a lack of maintenance and/or impact damage." [5] (Italics added.)

"A summary judgment motion triggers a procedure in which the

---

[4] All of the facts in this paragraph are taken from Ritter's separate statement. (See Code Civ. Proc., § 437c, subd. (b)(1).) The record indicates Eclipse made some evidentiary objections, but the trial court's evidentiary rulings are not included in the record. The facts in this paragraph are the same facts relied on by Eclipse as stated in their respondent's brief, so we presume its evidentiary objections were not sustained.

[5] Eclipse does not appear to dispute that a latent defect tolls the statute of limitations under the "'discovery rule.'" (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 ["An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action"]; *Mills v. Forestex Co., supra,* 108 Cal.App.4th at p. 646 [homeowners' breach of implied warranty of fitness and merchantability claim against builder for latent defect in siding was subject to four-year limitations period, which accrued from the date of discovery of the defect].)

parties pierce the pleadings to determine whether there are disputed facts and thus whether a trial is necessary to resolve the dispute. [Citation.] Thus, when a summary judgment is challenged, a reviewing court must examine the facts presented by the parties to determine whether summary judgment or summary adjudication was warranted." (*Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235, 260, disapproved on another ground in *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 77.)

Here, we find that a trier of fact could reasonably draw an inference that a defect in the siding existed at the time Ritter purchased the trailer in 2012. We also find that a trier of fact could reasonably infer that the defect was due to the welding issue identified by the dealer, and the defect was "latent," meaning that it was "one not discoverable by inspection made with ordinary care." (See Black's Law Dict., *supra*, p. 883.)

Thus, we find there are disputed issues of material fact regarding (1) whether there was a latent defect, and (2) if so, when Ritter discovered it (so as to begin the running of the four-year statute of limitations).

Eclipse may be correct that any defect causing the separation of the wall from the trailer's frame was due to Ritter's lack of maintenance or some intervening impact damage. But this is plainly a disputed issue of material fact. In other words, this issue needs to be resolved by a fact finder after an evidentiary hearing (e.g., a trial), rather than through a summary judgment process.[6] (See Code Civ. Proc., § 437c, subd. (c) ["summary judgment shall not be granted by the court based on inferences reasonably

---

[6] Indeed, Eclipse's argument that their inference drawn from the facts is "more reasonable" than Ritter's inference drawn from *the same facts* pretty much proves the point: a motion for summary judgment is not appropriate as to the implied warranty of merchantability claim.

17

deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact"].)

In sum, we find that the trial court improperly granted Eclipse's motion as to Ritter's implied warranty claim.

## C. *The Federal Warranty Act*

"The Magnuson-Moss Warranty–Federal Trade Commission Improvement Act (Magnuson-Moss), 15 U.S.C. sections 2301 et seq., authorizes a civil suit by a consumer to enforce the terms of *an implied or express warranty*. Magnuson-Moss 'calls for the application of state written and implied warranty law, not the creation of additional federal law' . . . ." (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 832–833, italics added.) As such, derivative "claims under the Magnuson-Moss Act stand or fall with [the] express and implied warranty claims under state law." (*Clemens v. DaimlerChrysler Corp.* (2006) 534 F.3d 1017, 1022.)

Here, Ritter's implied warranty cause of action stands under state law (as we have discussed in this opinion); therefore, that derivative portion of Ritter's federal warranty cause of action stands as well. [7]

---

[7] "Although the Magnuson–Moss Act creates a separate federal cause of action for breach of an implied warranty, courts must look to the relevant state law to determine the meaning and creation of any implied warranty. See 15 U.S.C. § 2301(7) ('The term "implied warranty" means an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product.'). As alleged in the Complaint, the first and second causes of action rely on the creation of implied warranties of merchantability and fitness under California's Song–Beverly Act." (*Gusse v. Damon Corp.* (C.D. Cal. 2007) 470 F.Supp.2d 1110, 1116.)

18

## III.

## DISPOSITION

The judgment granting Eclipse's motion for summary judgment is reversed. The judgment granting Eclipse's motion for summary adjudication is reversed in part and affirmed in part. As to the first cause of action (the express warranty claim), the judgment is affirmed. As to the third cause of action (the implied warranty claim), the judgment is reversed. As to the second cause of action (the federal warranty claim), the judgment is reversed. Costs on appeal are awarded to Ritter.

MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.

19